(Slip Opinion) OCTOBER TERM, 2018 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## STOKELING *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 17–5554.  Argued October 9, 2018—Decided January 15, 2019

Petitioner Stokeling pleaded guilty to possessing a firearm and ammunition after having been convicted of a felony, in violation of 18 U. S. C. §922(g)(1).  Based on Stokeling's prior criminal history, the probation office recommended the mandatory minimum 15-year prison term that the Armed Career Criminal Act (ACCA) provides for §922(g) violators who have three previous convictions "for a violent felony," §924(e).  As relevant here, Stokeling objected that his prior Florida robbery conviction was not a "violent felony," which ACCA defines, in relevant part, as "any crime punishable by imprisonment for a term exceeding one year" that "has as an element the use, attempted use, or threatened use of physical force against the person of another," §924(e)(2)(B)(i).  The District Court held that Stokeling's actions during the robbery did not justify an ACCA sentence enhancement, but the Eleventh Circuit reversed.

*Held*:

 1. ACCA's elements clause encompasses a robbery offense that requires the defendant to overcome the victim's resistance.  Pp. 3–12.

  (a) As originally enacted, ACCA prescribed a sentence enhancement for certain individuals with three prior convictions "for robbery or burglary," 18 U. S. C. App. §1202(a) (1982 ed., Supp. II), and defined robbery as an unlawful taking "by force or violence," §1202(c)(8)—a clear reference to common-law robbery, which required a level of "force" or "violence" sufficient to overcome the resistance of the victim, however slight.  When Congress amended ACCA two years later, it replaced the enumerated crimes with the elements clause, an expanded enumerated offenses clause, and the now-defunct residual clause.  The new elements clause extended ACCA to cover *any* offense that has as an element "the use, attempted

use, or threatened use of physical *force,*" §924(e)(2)(B)(i) (emphasis added). By replacing robbery with a clause that has "force" as its touchstone, Congress retained the same common-law definition that undergirded the definition of robbery in the original ACCA. This understanding is buttressed by the then widely accepted definitions of robbery among the States, a significant majority of which defined nonaggravated robbery as requiring a degree of force sufficient only to overcome a victim's resistance. Under Stokeling's reading, many of those state robbery statutes would not qualify as ACCA predicates. But federal criminal statutes should not be construed in ways that would render them inapplicable in many States. Pp. 3–8.

(b) This understanding of "physical force" comports with *Johnson* v. *United States*, 559 U. S. 133. The force necessary for misdemeanor battery addressed in *Johnson* does not require resistance or even physical aversion on the part of the victim. Rather, the "slightest offensive touching" would qualify. *Id.*, at 139. It is thus different in kind from the force necessary to overcome resistance by a victim, which is inherently "violent" in the sense contemplated by *Johnson* and "suggest[s] a degree of power that would not be satisfied by the merest touching." *Ibid. Johnson* did not purport, as Stokeling suggests, to establish a force threshold so high as to exclude even robbery from ACCA's scope. Pp. 8–10.

(c) Stokeling's suggested definition of "physical force"—force "reasonably expected to cause pain or injury"—is inconsistent with the degree of force necessary to commit robbery at common law. Moreover, the Court declined to adopt this standard in *Johnson*. Stokeling's proposal would prove exceedingly difficult to apply, would impose yet another indeterminable line-drawing exercise on the lower courts, and is not supported by *United States* v. *Castleman*, 572 U. S. 157. Pp. 10–12.

2. Robbery under Florida law qualifies as an ACCA-predicate offense under the elements clause. The term "physical force" in ACCA encompasses the degree of force necessary to commit common-law robbery. And the Florida Supreme Court has made clear that the robbery statute requires "resistance by the victim that is overcome by the physical force of the offender." *Robinson* v. *State*, 692 So. 2d 883, 886. Pp. 12–13.

684 Fed. Appx. 870, affirmed.

THOMAS, J., delivered the opinion of the Court, in which BREYER, ALITO, GORSUCH, and KAVANAUGH, JJ., joined. SOTOMAYOR, J., filed a dissenting opinion, in which ROBERTS, C. J., and GINSBURG and KAGAN, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 17–5554

_____

## DENARD STOKELING, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[January 15, 2019]

JUSTICE THOMAS delivered the opinion of the Court.

This case requires us to decide whether a robbery offense that has as an element the use of force sufficient to overcome a victim's resistance necessitates the use of "physical force" within the meaning of the Armed Career Criminal Act (ACCA), 18 U. S. C. §924(e)(2)(B)(i). We conclude that it does.

I

In the early hours of July 27, 2015, two people burgled the Tongue & Cheek restaurant in Miami Beach, Florida. Petitioner Denard Stokeling was an employee of the restaurant, and the Miami Beach Police identified him as a suspect based on surveillance video from the burglary and witness statements. After conducting a criminal background check, police learned that Stokeling had previously been convicted of three felonies—home invasion, kidnaping, and robbery. When confronted, Stokeling admitted that he had a gun in his backpack. The detectives opened the backpack and discovered a 9-mm semiautomatic firearm, a magazine, and 12 rounds of ammunition.

Stokeling pleaded guilty in federal court to possessing a firearm and ammunition after having been convicted of a felony, in violation of 18 U. S. C. §922(g)(1).  The probation office recommended that Stokeling be sentenced as an armed career criminal under ACCA, which provides that a person who violates §922(g) and who has three previous convictions for a "violent felony" shall be imprisoned for a minimum of 15 years.  §924(e).  ACCA defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that

> "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> "(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  §924(e)(2)(B).

As relevant here, Stokeling objected that his 1997 Florida robbery conviction was not a predicate offense under ACCA.  This conviction, he argued, did not qualify under the first clause—the "elements clause"—because Florida robbery does not have "as an element the use, attempted use, or threatened use of physical force." *

Under Florida law, robbery is defined as "the taking of money or other property . . . from the person or custody of another, . . . when in the course of the taking there is the use of force, violence, assault, or putting in fear."  Fla. Stat. §812.13(1) (1995).  The Florida Supreme Court has explained that the "use of force" necessary to commit robbery requires "resistance by the victim that is overcome by the physical force of the offender." *Robinson* v. *State*,

—————

*The Government did not argue that Florida robbery should qualify under §924(e)(2)(B)(ii), presumably because robbery is not among the enumerated offenses and the Court held the "residual clause" unconstitutionally vague in *Johnson* v. *United States*, 576 U. S. ___ (2015).

692 So. 2d 883, 886 (1997).

Instead of applying a categorical approach to the elements clause, the District Court evaluated whether the facts of Stokeling's robbery conviction were serious enough to warrant an enhancement. The court concluded that, although Stokeling "'grabbed [the victim] by the neck and tried to remove her necklaces'" as she "'held onto'" them, his actions did not "justify an enhancement." Sentencing Hearing in 15–cv–20815 (SD Fla.), Doc. 45, pp. 10–11. The court then sentenced Stokeling to less than half of the mandatory minimum 15-year term of imprisonment provided by ACCA.

The Eleventh Circuit reversed. 684 Fed. Appx. 870 (2017). It held that the District Court erred in making its own factual determination about the level of violence involved in Stokeling's particular robbery offense. *Id.,* at 871. The court also rejected Stokeling's argument that Florida robbery does not categorically require sufficient force to constitute a violent felony under ACCA's elements clause. *Id.,* at 871–872.

We granted certiorari to address whether the "force" required to commit robbery under Florida law qualifies as "physical force" for purposes of the elements clause. 584 U. S. \_\_\_ (2018). We now affirm.

II

Construing the language of the elements clause in light of the history of ACCA and our opinion in *Johnson* v. *United States*, 559 U. S. 133 (2010), we conclude that the elements clause encompasses robbery offenses that require the criminal to overcome the victim's resistance.

A

As originally enacted, ACCA prescribed a 15-year minimum sentence for any person who received, possessed, or transported a firearm following three prior convictions "for

robbery or burglary." 18 U. S. C. App. §1202(a) (1982 ed., Supp. II). Robbery was defined in relevant part as "any felony consisting of the taking of the property of another from the person or presence of another *by force or violence*." §1202(c)(8) (1982 ed., Supp. II) (emphasis added).

The statute's definition mirrored the elements of the common-law crime of robbery, which has long required force or violence. At common law, an unlawful taking was merely larceny unless the crime involved "violence." 2 J. Bishop, Criminal Law §1156, p. 860 (J. Zane & C. Zollman eds., 9th ed. 1923). And "violence" was "committed if sufficient force [was] exerted to overcome the resistance encountered." *Id.,* at 861.

A few examples illustrate the point. Under the common law, it was robbery "to seize another's watch or purse, and use sufficient force to break a chain or guard by which it is attached to his person, or to run against another, or rudely push him about, for the purpose of diverting his attention and robbing him." W. Clark & W. Marshall, Law of Crimes 554 (H. Lazell ed., 2d ed. 1905) (Clark & Marshall) (footnotes omitted). Similarly, it was robbery to pull a diamond pin out of a woman's hair when doing so tore away hair attached to the pin. See 2 W. Russell, Crimes and Indictable Misdemeanors 68 (2d ed. 1828). But the crime was larceny, not robbery, if the thief did not have to overcome such resistance.

In fact, common-law authorities frequently used the terms "violence" and "force" interchangeably. See *ibid.* (concluding that "if any injury be done to the person, or there be any struggle by the party to keep possession of the property before it be taken from him, there will be a sufficient actual 'violence'" to establish robbery); Clark & Marshall 553 ("Sufficient *force* must be used to overcome resistance. . . . If there is any injury to the person of the owner, or if he resists the attempt to rob him, and his resistance is overcome, there is sufficient *violence* to make

the taking robbery, however slight the resistance" (emphasis added)). The common law also did not distinguish between gradations of "violence." If an act physically overcame a victim's resistance, "however slight" that resistance might be, it necessarily constituted violence. *Ibid.*; 4 W. Blackstone, Commentaries on the Laws of England 242 (1769) (distinguishing "taking . . . by force" from "privately stealing," and stating that the use of this "violence" differentiates robbery from other larcenies); see also 3 *id.,* at 120 (explaining, in the battery context, that "the law cannot draw the line between different degrees of violence, and therefore totally prohibits the first and lowest stage of it").

The overlap between "force" and "violence" at common law is reflected in modern legal and colloquial usage of these terms. "Force" means "[p]ower, violence, or pressure directed against a person or thing," Black's Law Dictionary 656 (7th ed. 1999), or "unlawful violence threatened or committed against persons or property," Random House Dictionary of the English Language 748 (2d ed. 1987). Likewise, "violence" implies force, including an "unjust or unwarranted use of force." Black's Law Dictionary, at 1564; accord, Random House Dictionary, at 2124 ("rough or injurious physical force, action, or treatment," or "an unjust or unwarranted exertion of force or power, as against rights or laws").

Against this background, Congress, in the original ACCA, defined robbery as requiring the use of "force or violence"—a clear reference to the common law of robbery. See *Samantar* v. *Yousuf,* 560 U. S. 305, 320, n. 13 (2010) ("Congress 'is understood to legislate against a background of common-law . . . principles'"). And the level of "force" or "violence" needed at common law was by this time well established: "Sufficient force must be used to overcome resistance . . . however slight the resistance." Clark & Marshall 553.

In 1986, Congress amended the relevant provisions of ACCA to their current form. The amendment was titled Expansion of Predicate Offenses for Armed Career Criminal Penalties. See Career Criminals Amendment Act of 1986, §1402, 100 Stat. 3207–39. This amendment replaced the two enumerated crimes of "robbery or burglary" with the current elements clause, a new enumerated-offenses list, and a (now-defunct) residual clause. See *Johnson* v. *United States*, 576 U. S. ___ (2015). In the new statute, robbery was no longer enumerated as a predicate offense. But the newly created elements clause extended ACCA to cover *any* offense that has as an element "the use, attempted use, or threatened use of physical *force*." 18 U. S. C. §924(e)(2)(B)(i) (2012 ed.) (emphasis added).

"'[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it.'" *Hall* v. *Hall*, 584 U. S. ___, ___ (2018) (slip op., at 13) (quoting Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 537 (1947)). That principle supports our interpretation of the term "force" here. By retaining the term "force" in the 1986 version of ACCA and otherwise "[e]xpan[ding]" the predicate offenses under ACCA, Congress made clear that the "force" required for common-law robbery would be sufficient to justify an enhanced sentence under the new elements clause. We can think of no reason to read "force" in the revised statute to require anything more than the degree of "force" required in the 1984 statute. And it would be anomalous to read "force" as *excluding* the quintessential ACCA-predicate crime of robbery, despite the amendment's retention of the term "force" and its stated intent to expand the number of qualifying offenses.

The symmetry between the 1984 definition of robbery (requiring the use of "force or violence") and the 1986 elements clause (requiring the use of "physical force") is striking. By replacing robbery as an enumerated offense

with a clause that has "force" as its touchstone, Congress made clear that "force" retained the same common-law definition that undergirded the original definition of robbery adopted a mere two years earlier. That conclusion is reinforced by the fact that the original 1984 statute defined "robbery" using terms with well-established common-law meanings.

Our understanding of "physical force" is further buttressed by the then widely accepted definitions of robbery in the States. In 1986, a significant majority of the States defined nonaggravated robbery as requiring force that overcomes a victim's resistance. The Government counts 43 States that measured force by this degree, 5 States that required "force" to cause bodily injury, and 2 States and the District of Columbia that permitted force to encompass something less, such as purse snatching. App. B to Brief for United States. Stokeling counters that, at most, 31 States defined force as overcoming victim resistance. Reply Brief 21. We need not declare a winner in this numbers game because, either way, it is clear that many States' robbery statutes would not qualify as ACCA predicates under Stokeling's reading.

His reading would disqualify more than just basic-robbery statutes. Departing from the common-law understanding of "force" would also exclude other crimes that have as an element the force required to commit basic robbery. For instance, Florida requires the same element of "force" for both armed robbery and basic robbery. See Fla. Stat. §812.13(2)(a) (distinguishing armed robbery from robbery by requiring the additional element of "carr[ying] a firearm or other deadly weapon" during the robbery). Thus, as Stokeling's counsel admitted at oral argument, "armed robbery in Florida" would not qualify under ACCA if his view were adopted. Tr. of Oral Arg. 3–4; see *United States* v. *Lee*, 886 F. 3d 1161, 1163, n. 1 (CA11 2018) (treating "Florida strong-arm robbery [*i.e.,*

basic robbery], armed robbery, and attempted robbery . . . the same for purposes of analyzing the ACCA's elements clause").

Where, as here, the applicability of a federal criminal statute requires a state conviction, we have repeatedly declined to construe the statute in a way that would render it inapplicable in many States. See, *e.g., United States* v. *Castleman*, 572 U. S. 157, 167 (2014) (reading "physical force" to include common-law force, in part because a different reading would render 18 U. S. C. §922(g)(9) "ineffectual in at least 10 States"); *Voisine* v. *United States*, 579 U. S. ___, ___ (2016) (slip op., at 9) (declining to interpret §912(a)(33)(A) in a way that would "risk rendering §922(g)(9) broadly inoperative" in 34 States and the District of Columbia). That approach is appropriate here as well.

B

Our understanding of "physical force" comports with *Johnson* v. *United States*, 559 U. S. 133 (2010). There, the Court held that "'actua[l] and intentiona[l] touching'"— the level of force necessary to commit common-law misdemeanor battery—did not require the "degree of force" necessary to qualify as a "violent felony" under ACCA's elements clause. *Id.*, at 138, 140. To reach this conclusion, the Court parsed the meaning of the phrase "physical force." First, it explained that the modifier "physical" "plainly refers to force exerted by and through concrete bodies—distinguishing physical force, from, for example, intellectual force or emotional force." *Id.*, at 138. The Court then considered "whether the term 'force' in [the elements clause] has the specialized meaning that it bore in the common-law definition of battery." *Id.*, at 139. After reviewing the context of the statute, the Court rejected the Government's suggestion that "force" encompassed even the "slightest offensive touching." *Ibid.*

Instead, it held that "physical force" means "*violent* force—that is, force capable of causing physical pain or injury to another person." *Id.,* at 140. Applying that standard to a Florida battery law criminalizing "*any* intentional physical contact," the Court concluded that the law did not require the use of "physical force" within the meaning of ACCA. *Ibid.*

Stokeling argues that *Johnson* rejected as insufficient the degree of "force" required to commit robbery under Florida law because it is not "substantial force." We disagree. The nominal contact that *Johnson* addressed involved physical force that is different in kind from the violent force necessary to overcome resistance by a victim. The force necessary for misdemeanor battery does not require resistance or even physical aversion on the part of the victim; the "unwanted" nature of the physical contact itself suffices to render it unlawful. See *State* v. *Hearns*, 961 So. 2d 211, 216 (Fla. 2007).

By contrast, the force necessary to overcome a victim's physical resistance is inherently "violent" in the sense contemplated by *Johnson*, and "suggest[s] a degree of power that would not be satisfied by the merest touching." 559 U. S., at 139. This is true because robbery that must overpower a victim's will—even a feeble or weak-willed victim—necessarily involves a physical confrontation and struggle. The altercation need not cause pain or injury or even be prolonged; it is the physical contest between the criminal and the victim that is itself "capable of causing physical pain or injury." *Id.,* at 140. Indeed, *Johnson* itself relied on a definition of "physical force" that specifically encompassed robbery: "'[f]orce consisting in a physical act, *esp. a violent act directed against a robbery victim*.'" *Id.,* at 139 (quoting Black's Law Dictionary 717 (9th ed. 2009); emphasis added). Robbery thus has always been within the "'category of violent, active crimes'" that Congress included in ACCA. 559 U. S., at 140.

To get around *Johnson*, Stokeling cherry picks adjectives from parenthetical definitions in the opinion, insisting that the level of force must be "severe," "extreme," "furious," or "vehement." These adjectives cannot bear the weight Stokeling would place on them. They merely supported *Johnson*'s actual holding: that common-law battery does not require "force capable of causing physical pain or injury." *Ibid. Johnson* did not purport to establish a force threshold so high as to exclude even robbery from ACCA's scope. Moreover, Stokeling ignores that the Court also defined "violence" as "'*unjust or improper* force.'" *Ibid.* (emphasis added). As explained above, the common law similarly linked the terms "violence" and "force." Overcoming a victim's resistance was *per se* violence against the victim, even if it ultimately caused minimal pain or injury. See Russell, Crimes and Indictable Misdemeanors, at 68.

## C

In the wake of *Johnson*, the Court has repeated its holding that "physical force" means "'force capable of causing physical pain or injury.'" *Sessions* v. *Dimaya*, 584 U. S. ___, ___ (2018) (slip op., at 19–20) (quoting *Johnson, supra*, at 140); see also *Castleman, supra*, at 173–174 (Scalia, J., concurring in part and concurring in judgment).

Finding this definition difficult to square with his position, Stokeling urges us to adopt a new, heightened reading of physical force: force that is "reasonably expected to cause pain or injury." For the reasons already explained, that definition is inconsistent with the degree of force necessary to commit robbery at common law. Moreover, the Court declined to adopt that standard in *Johnson*, even after considering similar language employed in a nearby statutory provision, 18 U. S. C. §922(g)(8)(C)(ii). 559 U. S., at 143. The Court instead settled on "force

*capable* of causing physical pain or injury." *Id.*, at 140 (emphasis added). "Capable" means "susceptible" or "having attributes . . . required for performance or accomplishment" or "having traits conducive to or features permitting." Webster's Ninth New Collegiate Dictionary 203 (1983); see also Oxford American Dictionary and Thesaurus 180 (2d ed. 2009) ("having the ability or quality necessary to do"). *Johnson* thus does not require any particular degree of likelihood or probability that the force used will cause physical pain or injury; only potentiality.

Stokeling's proposed standard would also prove exceedingly difficult to apply. Evaluating the statistical probability that harm will befall a victim is not an administrable standard under our categorical approach. Crimes can be committed in many different ways, and it would be difficult to assess whether a crime is categorically likely to harm the victim, especially when the statute at issue lacks fine-tuned gradations of "force." We decline to impose yet another indeterminable line-drawing exercise on the lower courts.

Stokeling next contends that *Castleman* held that minor uses of force do not constitute "violent force," but he misreads that opinion. In *Castleman*, the Court noted that for purposes of a statute focused on domestic-violence misdemeanors, crimes involving relatively "minor uses of force" that might not "constitute 'violence' in the generic sense" could nevertheless qualify as predicate offenses. 572 U. S., at 165. The Court thus had no need to decide more generally whether, under *Johnson*, conduct that leads to relatively minor forms of injury—such as "a cut, abrasion, [or] bruise"—"necessitate[s]" the use of "violent force." 572 U. S., at 170. Only Justice Scalia's separate opinion addressed that question, and he concluded that force as small as "hitting, slapping, shoving, grabbing, pinching, biting, and hair pulling," *id.*, at 182 (alterations omitted), satisfied *Johnson*'s definition. He reasoned that "[n]one of

those actions bears any real resemblance to mere offensive touching, and all of them are capable of causing physical pain or injury." 572 U. S., at 182. This understanding of "physical force" is consistent with our holding today that force is "capable of causing physical injury" within the meaning of *Johnson* when it is sufficient to overcome a victim's resistance. Such force satisfies ACCA's elements clause.

### III

We now apply these principles to Florida's robbery statute to determine whether it "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U. S. C. §924(e)(2)(B)(i). We conclude that it does.

As explained, Florida law defines robbery as "the taking of money or other property . . . from the person or custody of another, . . . when in the course of the taking there is the use of force, violence, assault, or putting in fear." Fla. Stat. §812.13(1). The Florida Supreme Court has made clear that this statute requires "resistance by the victim that is overcome by the physical force of the offender." *Robinson* v. *State*, 692 So. 2d 883, 886 (1997). Mere "snatching of property from another" will not suffice. *Ibid.*

Several cases cited by the parties illustrate the application of the standard articulated in *Robinson*. For example, a defendant who grabs the victim's fingers and peels them back to steal money commits robbery in Florida. *Sanders* v. *State*, 769 So. 2d 506, 507–508 (Fla. App. 2000). But a defendant who merely snatches money from the victim's hand and runs away has not committed robbery. *Goldsmith* v. *State*, 573 So. 2d 445 (Fla. App. 1991). Similarly, a defendant who steals a gold chain does not use "'force,' within the meaning of the robbery statute," simply because the victim "fe[els] his fingers on the back of her neck." *Walker* v. *State*, 546 So. 2d 1165, 1166–1167 (Fla.

App. 1989). It is worth noting that, in 1999, Florida enacted a separate "sudden snatching" statute that proscribes this latter category of conduct; under that statute, it is unnecessary to show either that the defendant "used any amount of force beyond that effort necessary to obtain possession of the money or other property" or that "[t]here was any resistance by the victim to the offender." Fla. Stat. §812.131 (1999).

Thus, the application of the categorical approach to the Florida robbery statute is straightforward. Because the term "physical force" in ACCA encompasses the degree of force necessary to commit common-law robbery, and because Florida robbery requires that same degree of "force," Florida robbery qualifies as an ACCA-predicate offense under the elements clause. Cf. *Descamps* v. *United States*, 570 U. S. 254, 261 (2013) ("If the relevant statute has the same elemen[t]," "then the prior conviction can serve as an ACCA predicate").

## IV

In sum, "physical force," or "force capable of causing physical pain or injury," *Johnson*, 559 U. S., at 140, includes the amount of force necessary to overcome a victim's resistance. Robbery under Florida law corresponds to that level of force and therefore qualifies as a "violent felony" under ACCA's elements clause. For these reasons, we affirm the judgment of the Eleventh Circuit.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 17–5554

_____

## DENARD STOKELING, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[January 15, 2019]

JUSTICE SOTOMAYOR, with whom THE CHIEF JUSTICE, JUSTICE GINSBURG, and JUSTICE KAGAN join, dissenting.

In *Johnson* v. *United States*, 559 U. S. 133 (2010), this Court ruled that the words "physical force" in the Armed Career Criminal Act (ACCA), 18 U. S. C. §924(e)(2), denote a heightened degree of force, rather than the minimal contact that would have qualified as "force" for purposes of the common-law crime of battery. *Id.,* at 139–140. This case asks whether Florida robbery requires such "physical force," and thus qualifies as a "violent felony" under the ACCA, even though it can be committed through use of only slight force. See §924(e)(2)(B). Under *Johnson*, the answer to that question is no. Because the Court's contrary ruling distorts *Johnson,* I respectfully dissent.

## I

As the majority explains, petitioner Denard Stokeling pleaded guilty in 2016 to being a felon in possession of a firearm in violation of 18 U. S. C. §922(g)(1). The Government and the probation department argued for an increased sentence under the ACCA. Stokeling objected.

The ACCA imposes a 15-year mandatory-minimum sentence on any §922(g) offender who has been convicted of at least three qualifying predicate convictions. §924(e)(1). As relevant here, a past conviction can qualify

as an ACCA predicate if it is what ACCA calls a "violent felony"—that is, "any crime punishable by imprisonment for a term exceeding one year" that

> "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> "(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." §924(e)(2)(B).

Clause (i) is often called the "elements clause" (or "force clause"), because it requires each qualifying crime to have an element involving force. The first part of clause (ii) is often called the "enumerated clause," because it enumerates certain generic crimes—such as burglary—that Congress sought to cover. The final part of clause (ii), often called the "residual clause," once offered a catchall to sweep in otherwise uncovered convictions, but the Court struck it down as unconstitutionally vague in 2015. See *Johnson* v. *United States*, 576 U. S. \_\_\_, \_\_\_ (slip op., at 15). So the elements clause and the enumerated clause are now the only channels by which a prior conviction can qualify as an ACCA "violent felony."

Whether Stokeling is subject to the ACCA's 15-year mandatory minimum hinges on whether his 1997 conviction for Florida robbery, see App. 10, qualifies under the elements clause. To determine whether a conviction qualifies as a violent felony under the ACCA, courts apply a method called the categorical approach. See *Taylor* v. *United States*, 495 U. S. 575, 600–602 (1990). In the elements-clause context, that method requires asking whether the least culpable conduct covered by the statute at issue nevertheless "has as an element the use, attempted use, or threatened use of physical force against the person of another." See §924(e)(2); *Johnson*, 559 U. S., at 137. If

it does not, then the statute is too broad to qualify as a "violent felony." In determining what a state crime covers for purposes of this federal sentencing enhancement, federal courts look to, and are constrained by, state courts' interpretations of state law. See *id.*, at 138.

As relevant here, Florida law defines robbery as "the taking of money or other property . . . from the person or custody of another . . . when in the course of the taking there is the use of force, violence, assault, or putting in fear." Fla. Stat. §812.13(1) (2017). The Florida Supreme Court has interpreted the statute's reference to force to require "force sufficient to overcome a victim's resistance." *Robinson* v. *State*, 692 So. 2d 883, 887 (1997). Otherwise, the "degree of force used is immaterial." *Montsdoca* v. *State*, 84 Fla. 82, 86, 93 So. 157, 159 (1922). If the resistance is minimal, the force need only be minimal as well.

## II

Florida robbery, as interpreted and applied by the Florida courts, covers too broad a range of conduct to qualify as a "violent felony" under the ACCA. Both the text and purpose of the ACCA—particularly as they have already been construed by our precedents—demonstrate why.

## A

In considering the text of the ACCA, we do not write on a clean slate. As everyone seems to agree, the key precedent here is this Court's decision in *Johnson* v. *United States*, 559 U. S. 133. See *ante*, at 3, 8. But while the majority claims to honor *Johnson, ante,* at 8–10, it does so in the breach.

*Johnson* concerned whether Florida battery qualified as an ACCA predicate under the elements clause. This Court held that it did not. To arrive at that answer, the Court was required to interpret what exactly Congress meant

when it used the words "physical force" to define the kind of "violent felony" that should be captured by the ACCA's elements clause. See 559 U. S., at 138–143.

Rather than parsing "cherry pick[ed] adjectives," *ante,* at 10, it is instructive to look to how *Johnson* actually answered that question. Writing for the Court, Justice Scalia explained:

> "We think it clear that in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person. See *Flores* v. *Ashcroft,* 350 F. 3d 666, 672 (CA7 2003) (Easterbrook, J.). Even by itself, the word 'violent' in §924(e)(2)(B) connotes a substantial degree of force. Webster's Second 2846 (defining 'violent' as '[m]oving, acting, or characterized, by physical force, esp. by extreme and sudden or by unjust or improper force; furious; severe; vehement . . . '); 19 Oxford English Dictionary 656 (2d ed. 1989) ('[c]haracterized by the exertion of great physical force or strength'); Black's [Law Dictionary] 1706 [(9th ed. 2009)] ('[o]f, relating to, or characterized by strong physical force'). When the adjective 'violent' is attached to the noun 'felony,' its connotation of strong physical force is even clearer. See *id.,* at 1188 (defining 'violent felony' as '[a] crime characterized by extreme physical force, such as murder, forcible rape, and assault and battery with a dangerous weapon'); see also *United States* v. *Doe,* 960 F. 2d 221, 225 (CA1 1992) (Breyer, C. J.) ('[T]he term to be defined, "violent felony," . . . calls to mind a tradition of crimes that involve the possibility of more closely related, active violence')." 559 U. S., at 140–141.

In other words, in the context of a statute delineating "violent felon[ies]," the phrase "physical force" signifies a

degree of force that is "*violent*," "substantial," and "strong"—"that is, force capable of causing physical pain or injury to another person." See *id.,* at 140; see also *id.,* at 142 ("As we have discussed . . . the term 'physical force' itself normally connotes force strong enough to constitute 'power'—and all the more so when it is contained in a definition of 'violent felony'").

The majority, slicing *Johnson* up, concentrates heavily on the phrase "capable of causing physical pain or injury" and emphasizes the dictionary definition of the word "capable" to suggest that *Johnson* "does not require any particular degree of likelihood or probability" of "pain or injury"—merely, as with any law professor's eggshell-victim hypothetical, "potentiality." *Ante,* at 10–11. Our opinions, however, should not be "parsed as though we were dealing with the language of a statute," *Reiter* v. *Sonotone Corp.,* 442 U. S. 330, 341 (1979), and in any event, the majority's parsing goes astray. It is clear in context that the Court in *Johnson* did not mean the word "capable" in the way that the majority uses it today, because *Johnson* rejected an interpretation of "physical force" that would have included a crime of battery that could be satisfied by "[t]he most 'nominal contact,' such as a 'ta[p] . . . on the shoulder without consent.'" 559 U. S., at 138. As any first-year torts student (or person with a shoulder injury) quickly learns, even a tap on the shoulder is "capable of causing physical pain or injury" in certain cases. So the Court could not have meant "capable" in the "potentiality" sense that the majority, see *ante*, at 11, ascribes to it. Rather, it meant it in the sense that its entire text indicates: "force capable of causing physical pain or injury" in the sense that a "strong" or "substantial degree of force" can cause physical pain or injury. See *Johnson,* 559 U. S., at 140. The phrase denoted, that is, a heightened degree of force.

Florida robbery, as interpreted by the Florida Supreme

Court, cannot meet *Johnson*'s definition of physical force. As noted above, Florida robbery requires "force sufficient to overcome a victim's resistance." *Robinson*, 692 So. 2d, at 887. But that can mean essentially no force at all. See *McCloud* v. *State*, 335 So. 2d 257, 258 (Fla. 1976) ("Any degree of force suffices to convert larceny into a robbery"); *Montsdoca*, 84 Fla., at 86, 93 So., at 159 ("The degree of force used is immaterial"). For example, the force element of Florida robbery is satisfied by a pickpocket who attempts to pull free after the victim catches his arm. See *Robinson*, 692 So. 2d, at 887, n. 10 (citing *Colby* v. *State*, 46 Fla. 112, 113, 35 So. 189, 190 (1903)). Florida courts have held the same for a thief who pulls cash from a victim's hand by "'peel[ing] [his] fingers back,'" regardless of "[t]he fact that [the victim] did not put up greater resistance." *Sanders* v. *State*, 769 So. 2d 506, 507 (Fla. App. 2000). The Government concedes, similarly, that a thief who grabs a bag from a victim's shoulder also commits Florida robbery, so long as the victim instinctively holds on to the bag's strap for a moment. See Tr. of Oral Arg. 32–34; see also *Benitez-Saldana* v. *State*, 67 So. 3d 320, 322–323 (Fla. App. 2011). And Stokeling points to at least one person who was convicted of Florida robbery after causing a bill to rip while pulling cash from a victim's hand. See App. B to Brief for Petitioner.

While these acts can, of course, be accomplished with more than minimal force, they need not be. The thief who loosens an already loose grasp or (assuming the angle is right) tears the side of a $5 bill has hardly used any force at all. Nor does the thief who simply pulls his arm free from a store employee's weak grasp or snatches a handbag onto which a victim fleetingly holds use "force capable of causing physical pain or injury to another person" in the sense that *Johnson* meant the phrase, because he does not use "a substantial degree of force" or "strong physical force." See *Johnson*, 559 U. S., at 140. By providing that

"[a]ny degree of force suffices to convert larceny into a robbery," *McCloud*, 335 So. 2d, at 258—and thus making robbers out of thieves who use minimal force—Florida expands its law beyond the line that *Johnson* drew. The least culpable conduct proscribed by Fla. Stat. §812.13 does not entail "physical force," §924(e)(2)(B)(i), as this Court properly construed that phrase in *Johnson*.

## B

The purpose underlying the ACCA confirms that a robbery statute that sweeps as broadly as Florida's does not qualify as an ACCA predicate.

As noted above, the ACCA prescribes a 15-year mandatory-minimum prison term for anyone convicted of being a felon in possession of a firearm so long as that person has three qualifying past convictions. In *Begay* v. *United States*, 553 U. S. 137 (2008), this Court explained that, "[a]s suggested by its title, the Armed Career Criminal Act focuses upon the special danger created when a particular type of offender—a violent criminal or drug trafficker—possesses a gun." *Id.,* at 146. The ACCA, that is to say, does not look to past crimes simply to get a sense of whether a particular defendant is generally a recidivist; rather, it looks to past crimes to determine specifically "the kind or degree of danger the offender would pose were he to possess a gun." *Ibid.*

*Begay* considered whether a New Mexico felony conviction for driving under the influence of alcohol (DUI) qualified as an ACCA predicate under the now-defunct residual clause. See *id.,* at 141–142. Felony DUI, the Court explained, did not fit with the types of crimes that Congress was trying to capture, because while it "reveal[ed] a degree of callousness toward risk," it did not "show an increased likelihood that the offender is the kind of person who might deliberately point [a] gun and pull the trigger." *Id.,* at 146. The Court had "no reason to believe that

Congress intended a 15-year mandatory prison term where that increased likelihood does not exist." *Ibid.*

The same is true here. The lower grade offenders whom Florida still chooses to call "robbers" do not bear the hallmarks of being the kind of people who are likely to point a gun and pull the trigger, nor have they committed the more aggravated conduct—pointing a weapon, inflicting bodily injury—that most people think of when they hear the colloquial term "robbery." Under Florida law, "robbers" can be glorified pickpockets, shoplifters, and purse snatchers. No one disputes that such an offender, if later discovered illegally in possession of a firearm, will in many cases merit greater punishment as a result of the past offense; unless it occurred far in the past, such a conviction will typically increase that defendant's advisory sentencing range under the U. S. Sentencing Guidelines. See *Rosales-Mireles* v. *United States*, 585 U. S. ___, ___–___ (2018) (slip op., at 2–3); United States Sentencing Commission, Guidelines Manual §§1B1.1(a)(6)–(7), 4A1.1, 4A1.2(e) (Nov. 2018). But there is "no reason to believe that Congress intended a 15-year mandatory prison term" for such offenders, who do not present the increased risk of gun violence that more aggravated offenders present. See *Begay*, 553 U. S., at 146.

### III

Unable to rely heavily on text, precedent, or purpose to support its holding that Florida robbery qualifies as an ACCA "violent felony," the majority turns to the common law, to legislative and statutory history, and finally to what it perceives as the consequences of ruling for Stokeling. None of these rationales is persuasive.

### A

The majority observes that Florida's statute requires no less force than was necessary to commit common-law

robbery. That may well be true: The majority notes, for example, that at common law "it was robbery to pull a diamond pin out of a woman's hair when doing so tore away hair attached to the pin," *ante,* at 4, and as anyone who has ever pulled a bobby pin out of her hair knows, hair can break from even the most minimal force. In the majority's telling, however, the ACCA itself "encompasses the degree of force necessary to commit common-law robbery." *Ante*, at 13. That proposition is flatly inconsistent with *Johnson*.

In explaining its interpretation of "physical force," the Court in *Johnson* expressly rejected the common law's definition of "force," see 559 U. S., at 139, instead recognizing that the phrase should be "give[n] . . . its ordinary meaning," *id.,* at 138. At common law, "force" could be "satisfied by even the slightest offensive touching." *Id.,* at 139. But as the Court observed, "[a]lthough a common-law term of art should be given its established common-law meaning, we do not assume that a statutory word is used as a term of art where that meaning does not fit." *Ibid.* (citation omitted). Rather, "context determines meaning," *ibid.*, and, "in the context of a statutory definition of '*violent* felony,'" the ordinary rather than the common-law meaning of "force" was what fit, *id.,* at 140.

The majority now says that while *Johnson* rejected the common-law meaning of force with regard to battery, it nevertheless meant somehow to preserve the common-law meaning of force with regard to robbery. See *ante*, at 4–6, 8–10. In other words, to reach its conclusion, the majority must construe "physical force" in §924(e)(2)(B)(i) to bear two different meanings—*Johnson*'s and the majority's—depending on the crime to which it is being applied. That is a radical and unsupportable step.

To be clear, the majority does not simply rule that the phrase "physical force" carries the common-law meaning in one place but a different meaning in another statutory

provision. There would certainly be precedent for that. See, *e.g., United States* v. *Castleman*, 572 U. S. 157, 162–168 (2014) (explaining why the phrase "physical force" took on a common-law meaning, rather than its ACCA meaning under *Johnson*, in the context of a statute defining a "'misdemeanor crime of domestic violence'"). *Johnson*, in fact, expressly reserved the question whether "physical force" might mean something different in the context of a different statutory definition. See 559 U. S., at 143–144.

What *Johnson* did not do, however, was suggest that "physical force" in a single clause—the elements clause—that *Johnson* addressed might mean two different things for two different crimes. See *id.,* at 143 ("We have interpreted the phrase 'physical force' only in the context of a statutory definition of 'violent felony'"); see also *id.,* at 138–142. *Johnson* had good reason not to say so: because that is not how we have said that statutory interpretation works. See, *e.g., Clark* v. *Martinez*, 543 U. S. 371, 378 (2005) (observing that a single statutory word or phrase "cannot . . . be interpreted to do" two different things "at the same time"); *Ratzlaf* v. *United States*, 510 U. S. 135, 143 (1994) (similar).

Starting today, however, the phrase "physical force" in §924(e)(2)(B)(i) will apparently lead a Janus-faced existence. When it comes to battery, that phrase will look toward ordinary meaning; when it comes to robbery, that same piece of statutory text will look toward the common law. To the extent that is a tenable construction, the majority has announced a brave new world of textual interpretation. To the extent that a phrase so divided cannot stand, meanwhile, one could be forgiven for thinking that the majority, though it claims to praise *Johnson*, comes instead to bury it.

### B

To shore up its argument that the ACCA's use of the phrase "physical force," at least in the context of robbery, takes on the common-law meaning of "force," the majority invokes the history of the ACCA. Statutory history is no help to the majority here.

As the majority notes, a precursor to the ACCA prescribed a mandatory-minimum sentence for people convicted of firearm offenses who had three qualifying prior convictions "for robbery or burglary." 18 U. S. C. App. §1202(a) (1982 ed., Supp. II). That statute defined robbery, as relevant, as "the taking of the property of another . . . by force or violence." §1202(c)(8) (1982 ed., Supp. II). See *ante*, at 3–4. In other words, it is undisputed that at one point, in a previous statute, Congress enumerated robbery as a qualifying predicate and used the words "force or violence" to describe a generic version of the crime.

Then, in 1986, Congress changed the statute, substituting instead the language we know today. See Career Criminals Amendment Act of 1986, §1402, 100 Stat. 3207–39. Gone was any explicit reference to "robbery"; in its place came not only the elements clause (our focus here) but also the enumerated clause (which retained an express reference to "burglary" but omitted "robbery") and the capacious residual clause (struck down in 2015). See *ante*, at 6; *supra,* at 2; see also *Taylor*, 495 U. S., at 582–584. So Congress did two salient things: It expanded the predicates in general, and it deleted an express reference to robbery.

The majority reasons that because (1) the old law's definition of "robbery" as a taking involving "force or violence" matched various common-law definitions of robbery, (2) Congress kept the word "force" (though not "or violence") in the new law's elements clause while deleting the word "robbery," and (3) Congress meant to expand the

enhancement's reach in a general sense, Congress must have meant for the phrase "physical force" in the new law also to carry the common-law meaning of robbery. See *ante*, at 4–7. The conclusion that the majority draws from these premises does not follow, for at least four reasons.

First, as already discussed, the question whether Congress' use of the phrase "physical force" in the new law— that is, in the ACCA's elements clause—carries the common-law meaning of "force" was already asked and answered by *Johnson*: It does not. See 559 U. S., at 138–143, 145; *supra,* at 9–10. This part of the majority's argument may be couched in statutory history, but it is no more than an attempt to relitigate *Johnson.*

Second, Congress deleted the word "robbery" from the statute altogether while still enumerating robbery's former neighbor, "burglary," in the enumerated clause. See *supra,* at 2, 11. When Congress keeps one piece of statutory text while deleting another, we generally "have no trouble concluding that" it does so with purpose, see, *e.g., Director of Revenue of Mo.* v. *CoBank ACB*, 531 U. S. 316, 324 (2001), absent some reason to believe that the missing term simply got "lost in the shuffle," *United States* v. *Wilson*, 503 U. S. 329, 336 (1992). See also, *e.g., Russello* v. *United States*, 464 U. S. 16, 23–24 (1983) ("Where Congress includes limiting language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was not intended"). Here, it is inconceivable that Congress simply lost track of robbery, one of only two generic crimes that it enumerated in the old statute. Accordingly, if Congress had wanted to retain the old statute's specific emphasis on robbery, the natural reading is that it would have accomplished that goal the same way it did with burglary: by making it an enumerated offense. That it did not do so is telling.

Third, the fact that Congress wished to "expan[d] the predicate offenses triggering the sentence enhancement,"

*Taylor*, 495 U. S., at 582, is entirely consistent with paring back the statute's sweep with regard to robbery specifically. I may wish to expand the contents of my refrigerator, but that does not mean that I will buy more of every single item that is currently in it the next time that I go shopping. Here, the ACCA—with its (new, generalized) elements clause, its (augmented) enumerated clause, and (until recently) its highly capacious residual clause—undeniably expanded the precursor statute's bare enumeration of robbery and burglary, regardless of how many robbery statutes qualify as predicates specifically under the elements clause.[1]

Fourth, even assuming that Congress wanted robbery to remain largely encompassed by the ACCA despite deleting the word from the precursor statute, that intent is fully consistent with properly applying *Johnson* here. The majority, by focusing on the elements clause, ignores the residual clause, which—until it was declared unconstitutional in 2015—provided a home for many crimes regardless of whether they included an element of violent "physical force."[2] Hewing to a proper reading of *Johnson*, in

———————

[1]Of course, whether Congress wished to pull back the throttle with regard to robbery across the whole ACCA is less certain. (Recall that Congress also enacted the capacious residual clause.) But that is why the statutory history cannot tell us what the majority claims that it can about the elements clause specifically. Instead, the more reliable guide is the new text that Congress enacted to replace the old. Cf. *West Virginia Univ. Hospitals, Inc.* v. *Casey*, 499 U. S. 83, 98 (1991) ("The best evidence of [Congress'] purpose is the statutory text adopted by both Houses of Congress and submitted to the President"). And here, Congress omitted generic robbery altogether and made the "violent felony" clause at issue require "physical force." See *supra*, at 2, 4–5, 11.

[2]In fact, the case in which this Court ruled that its decision striking down the residual clause applied retroactively on collateral review centered on a Florida robbery conviction under §812.13(1). See *Welch* v. *United States*, 578 U. S. \_\_\_, \_\_\_–\_\_\_ (2016) (slip op., at 4–5). The Eleventh Circuit, reviewing the defendant's ACCA enhancement on direct appeal, had ruled that Florida robbery (including when, under

other words, does not require assuming that Congress constricted the precursor statute's application to robbery when it enacted today's ACCA; whatever robberies would have qualified under the old statute presumably could have still qualified under the residual clause during its nearly 20-year existence.

In short, the statutory history does not undermine the conclusion that the ACCA's elements clause, under our precedents, is not broad enough to encompass Florida's robbery statute. Congress deleted the word "robbery," kept the word "burglary," supplemented burglary with the catchall residual clause that still captured many robberies outside the elements clause, and used the phrase "physical force" in the elements clause to define a type of "violent felony," which *Johnson* tells us requires more force than the term's common-law meaning denotes. See 559 U. S., at 138–143, 145. Statutory history cannot get the majority past both the text and the force of *stare decisis* here.

C

That leaves the majority with only the practical consequences that it asserts would follow if this Court were to hold that Florida robbery does not qualify under the ACCA's elements clause. See *ante*, at 7–8. While looking to how an interpretation of a federal statute would affect the applicability of related state statutes can be a useful approach in these cases, see, *e.g., Castleman*, 572 U. S., at 167, the results that follow from a proper reading of

_____

previous law, it could be accomplished merely "by sudden snatching") qualified as an ACCA predicate under the residual clause without deciding whether it also qualified under the elements clause. See *United States* v. *Welch*, 683 F. 3d 1304, 1310–1314 (2012). Other Circuits likewise ruled, in the years before the clause's demise, that other state robbery statutes qualified under the residual clause. See, *e.g., United States* v. *Mitchell*, 743 F. 3d 1054, 1062–1063 (CA6 2014) (collecting cases).

*Johnson* are not nearly as incongruous as the majority suggests.

To begin, take the majority's assertion "that many States' robbery statutes would not qualify as ACCA predicates," *ante*, at 7, if the Court were to apply *Johnson* as it was written. The accuracy of this statement is far less certain than the majority's opinion lets on. While Stokeling and the Government come close to agreeing that at least 31 States' robbery statutes do have an overcoming-resistance requirement, see *ante*, at 7, that number is not conclusive because neither Stokeling nor the Government has offered an accounting of how many of those States allow minimal force to satisfy that requirement, as Florida does. Because robbery laws vary from State to State, and because even similarly worded statutes may be construed differently by different States' courts, some of those 31 States may well require more force than Florida does. See, *e.g., United States* v. *Doctor*, 842 F. 3d 306, 312 (CA4 2016) (ruling that "there is no indication that South Carolina robbery by violence"—a statute cited by the Government here—"can be committed with minimal actual force"); see also *Gonzales* v. *Duenas-Alvarez*, 549 U. S. 183, 193 (2007) (explaining that the categorical approach "requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime").[3]

—————

[3]The majority is able to suggest that following *Johnson* would beget a larger practical effect because it frames the question presented more broadly than is warranted. The majority avers that "[t]his case requires us to decide whether a robbery offense that has as an element the use of force sufficient to overcome a victim's resistance necessitates the use of 'physical force' within the meaning of the [ACCA]." *Ante*, at 1. But this case hinges on the fact that the Florida courts have ruled that the amount of resistance offered—and therefore the amount of force necessary to overcome it—is irrelevant. See *supra*, at 6–7. In other words, this case presents only the narrower question whether a robbery offense that has as an element the use of force sufficient to

Furthermore, even if it is true "that many States' rob-
bery statutes would not qualify as ACCA predicates"
under a faithful reading of *Johnson*, see *ante*, at 7, that
outcome would stem just as much (if not more) from the
death of the residual clause as from a decision in this case.
As discussed above, various state robbery statutes quali-
fied under that expansive clause for nearly 20 years, until
vagueness problems led this Court to strike the clause
down as unconstitutional. See *supra,* at 13–14, and n. 2;
see also *Johnson* v. *United States*, 576 U. S. ___ (2015).
The fall of that clause would therefore be an independent
cause of any drop in qualifying predicates, regardless of
what this Court decides today. (A drop in robbery statutes
qualifying as ACCA predicates could also, of course, be
traceable to Congress' decision not to continue enumerat-
ing robbery when it enacted the ACCA in the first place.)
In short, the majority, fearful for the camel, errs in blam-
ing the most recent straw.[4]

Separately, even if a number of simple robbery statutes
were to cease qualifying as ACCA predicates, that does not
mean—as the majority implies, see *ante*, at 7—that the
same fate necessarily would befall most or even many

_____

overcome a victim's resistance—even if that resistance is minimal—
necessitates the use of "physical force" within the meaning of the
ACCA. See also Brief for Petitioner i. If a state robbery statute's
overcoming-resistance requirement were pegged under state law to
more than minimal resistance, this would be a different case.

[4]The majority's doubling down on *Johnson*'s "capable of causing
physical pain or injury" language, see *ante,* at 10–11, suggests nostalgia
for the residual clause (which reads: "otherwise involves conduct that
presents a serious potential risk of physical injury to another," 18
U. S. C. §924(e)(2)(B)). Congress could, at any time, re-enumerate
robbery (and any other crimes it might have intended the residual
clause to cover) if it so chose. The majority's decision today, mean-
while—with its endorsement of the mere "potentiality" of injury, see
*ante,* at 11—risks sowing confusion in the lower courts for years to
come.

aggravated robbery statutes. The majority offers the single example of Florida aggravated robbery, noting that "Florida requires the same element of 'force' for both armed robbery and basic robbery." *Ibid.* But while the majority accurately describes Florida law, there is scant reason to believe that a great many other States' statutes would be similarly affected, because the effect that hewing to *Johnson* would have on Florida aggravated robbery stems from the idiosyncrasy that Florida aggravated robbery requires neither displaying a weapon nor threatening or inflicting bodily injury.[5] The result for Florida aggravated robbery therefore sheds little light on what would happen to other aggravated-robbery statutes, the vast majority of which do (and did at the time of the ACCA's enactment) appear to provide for convictions on such grounds—and whose validity as ACCA predicates would not necessarily turn on the question the Court faces today.[6] The majority mistakes one anomalous result for a

_____

[5]Specifically, hewing to a proper reading of *Johnson* would also affect Florida's aggravated robbery statute because the crime's only element involving force is the one that it shares with Florida simple robbery. See Fla. Stat. §812.13(1). In Florida, robbery becomes aggravated if the defendant "carrie[s]" a weapon, see §812.13(2), but that means that the crime sweeps in offenders who never brandished, used, or otherwise intimated that they were armed, see, *e.g., State* v. *Burris*, 875 So. 2d 408, 413 (Fla. 2004), and therefore prevents the crime from necessarily involving the "threatened use of physical force," see 18 U. S. C. §924(e)(2)(B)(i). See also Tr. of Oral Arg. 4 (explaining this point).

[6]See, *e.g.,* Ala. Code §13A–8–41(a)(2) (2015); Alaska Stat. §§11.41.500(a)(2)–(3) (2016); Ariz. Rev. Stat. Ann. §13–1904(A)(2) (2018); Ark. Code Ann. §§5–12–103(a)(2)–(3) (2013); Cal. Penal Code Ann. §§12022.53, 12022.7 (West 2018 Cum. Supp.); Colo. Rev. Stat. Ann. §18–4–302(1)(b) (2018); Conn. Gen. Stat. §§53a–134(a)(1), (3) (2017); Del. Code Ann., Tit. 11, §§832(a)(1)–(3) (2015); Ga. Code Ann. §16–8–41(a) (2018); Haw. Rev. Stat. §§708–840(1)(a), (b)(ii) (2014); Ill. Comp. Stat., ch. 720, §§5/18–1(b)(1), 5/18–2(a)(3)–(4) (2018 Cum. Supp.); Ind. Code §35–42–5–1 (2018 Cum. Supp.); Kan. Stat. Ann. §21–5420(b)(2) (Supp. 2017); Ky. Rev. Stat. Ann. §§515.020(1)(a), (c) (Lexis 2014); La. Rev. Stat. Ann. §§14:64.1(A), 64.3, 64.4(A)(1) (West 2016);

reason not to apply *Johnson* as it was written.

## IV

This Court's decision in *Johnson* tells us that when Congress wrote the words "physical force" in the context of a statute targeting "violent felon[ies]," it eschewed the common-law meaning of those words and instead required a higher degree of force. See 559 U. S., at 138–143, 145. *Johnson* resolves this case. Florida law requires no more than minimal force to commit Florida robbery, and Florida law therefore defines that crime more broadly than Congress defined the elements clause.

The crime that most people think of when they think of "robbery" is a serious one. That is all the more reason, however, that this Court should not allow a dilution of the

———

Me. Rev. Stat. Ann., Tit. 17–A, §651(1)(D) (2018 Cum. Supp.); Md. Crim. Law Code Ann. §3–403(a)(2) (2012); Mich. Comp. Laws Ann. §750.529 (West 2004); Minn. Stat. §609.245(2) (2018); Miss. Code Ann. §97–3–79 (2014); Mo. Rev. Stat. §§570.023(1)(1), (3)–(4) (2016); Neb. Rev. Stat. §§28–324, 28–1205 (2015); N. H. Rev. Stat. Ann. §636:1(III)(b) (2016); N. Y. Penal Law Ann. §§160.10(2)(a)–(b), 160.15(1), (3)–(4) (West 2015); N. D. Cent. Code Ann. §§12.1–22–01(1)–(2) (2012); Ohio Rev. Code Ann. §§2911.01(A)(1), (3) (Lexis 2014); Okla. Stat. Ann., Tit. 21, §§797(1)–(3), 801 (2015); Ore. Rev. Stat. §§164.405(1)(a), 164.415(1)(b)–(c) (2017); 18 Pa. Cons. Stat. §§3701(a)(1)(i)–(ii), (iv) (2015); R. I. Gen. Laws §11–39–1(a) (2002); S. D. Codified Laws §22–30–6 (2017); Tenn. Code Ann. §§39–13–402(a), 39–13–403(a) (2011); Tex. Penal Code Ann. §29.03(a) (West 2011); Utah Code §§76–6–302(1)(a)–(b) (2017); Vt. Stat. Ann., Tit. 13, §608(c) (2009); Va. Code Ann. §§18.2–53.1, 18.2–58 (2014); Wash. Rev. Code §§9A.56.200(1)(a)(ii)–(iii) (2015); W. Va. Code Ann. §61–2–12(a) (Lexis 2014); Wis. Stat. §943.32(2) (2005); Wyo. Stat. Ann. §§6–2–401(c) (2017); see also Reply Brief 22–23; App. to Reply Brief 9a–18a (listing 29 States with aggravated-robbery statutes that could have qualified at the time of the ACCA's enactment because of a weapon-using, weapon-displaying, or weapon-representing element; an additional 10 States, excluding duplicates, that could have potentially qualified at that time because of a physical-injury element; and an additional 15 States, some duplicative, with potentially qualifying statutes that have been enacted since).

term in state law to drive the expansion of a federal statute targeted at violent recidivists.  Florida law applies the label "robbery" to crimes that are, at most, a half-notch above garden-variety pickpocketing or shoplifting.  The Court today does no service to Congress' purposes or our own precedent in deeming such crimes to be "violent felonies"—and thus predicates for a 15-year mandatory-minimum sentence in federal prison.

I respectfully dissent.