[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11972
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cr-20140-KMW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARIO TAVAROUS YOUNG,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 1, 2019)

Before MARTIN, NEWSOM and FAY, Circuit Judges.

PER CURIAM:

Mario Tavarous Young appeals his 180-month total sentence for possession with intent to distribute a controlled substance and possession of a firearm by a convicted felon.  We affirm.

## I. BACKGROUND

### A. 2014 Criminal Case

In March 2014, a federal grand jury returned an indictment charging Young with possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count 1); possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1) (Count 2); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 3).  In September 2014, a jury found him guilty of Counts 1 and 2 of the indictment and not guilty of Count 3.

In a Presentence Investigation Report ("PSI"), a probation officer determined that Young qualified as an armed career criminal, under the Armed Career Criminal Act ("ACCA"), based on four prior convictions: (1) a 1995 Florida conviction for burglary, possession of burglary tools, and grand theft; (2) a 1995 Florida conviction for attempted robbery and robbery; (3) a 1996 Florida drug conviction; and (4) a 2006 Florida conviction for selling cocaine near a school and selling a controlled substance near a public housing complex.  Young objected

2

to the PSI, specifically as to his designation as an armed career criminal.  At the sentencing hearing, Young noted that the PSI had flagged four convictions as predicate offenses under the ACCA, but, in relevant part, he argued that he had no knowledge of the 1996 Florida drug conviction.  After hearing arguments regarding whether the four flagged convictions qualified as predicate offenses, the district court determined that Young had three predicate offenses and qualified as an armed career criminal under the ACCA.  However, it sustained Young's objection to the 1996 conviction for selling cocaine as qualifying as a predicate offense because the government conceded that it could not prove, at the time of sentencing, that Young actually was the person who the PSI claimed had been arrested in relation to the 1996 conviction.  Thus, the district court struck the entry for the 1996 conviction from the PSI.

On appeal, this court vacated Young's convictions because his right to a speedy trial had been violated.  We remanded with instructions for the district court to dismiss his indictment.  *United States v. Young*, 674 F. App'x 855, 859-60 (11th Cir. 2016).  The district court subsequently dismissed Young's indictment without prejudice.

3

**B. The Instant Criminal Case**

In February 2017, Young was indicted for one count of possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count 1), and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1) (Count 2).  A jury found him guilty on both counts.  The probation officer prepared a PSI, which became available on January 5, 2018.  First, she grouped Counts 1 and 2 together, pursuant to U.S.S.G. § 3D1.2(c), and assigned a base offense level of 20, pursuant to §§ 3D 1.3(a) and 2K2.l(a)(4)(A).  Because Young had used or possessed a firearm or ammunition in connection with his offense, she then increased the offense level by four points pursuant to § 2K2.1(b)(6)(B), arriving at a total offense level of 24.

In relevant part, the probation officer listed the following entries in Young's criminal history: a Florida *nolo contendere* plea in 1995 for robbery, a Florida conviction in 2006 for selling cocaine, and under "Other Arrests," a Florida guilty plea made by Young in 1996 for selling cocaine at Fernandina Beach, Florida.  She noted that, although her records indicated that Young had been arrested, charged, and convicted for the 1996 cocaine offense, Young claimed that he had no knowledge of the offense and had objected to the conviction being used in the PSI

4

associated with his previous criminal case.  She also noted that the district court in that previous case had ordered the 1996 conviction stricken from the PSI.

With an offense level of 24 and criminal history category of III, Young's guideline imprisonment range was 63-78 months.  The probation officer stated that an enhancement under 18 U.S.C. § 924(e)(1) was not warranted because, as the district court in Young's previous case had stricken the 1996 conviction from the previous PSI, Young did not possess the three predicate offenses necessary to trigger that provision.

The government filed objections to the PSI on January 31, 2018.  It asserted that Young qualified as an armed career criminal, pursuant to 18 U.S.C. § 924(e), based on his previous Florida convictions for robbery in 1995, selling cocaine in 1996, and selling cocaine in 2006.[1]  It then noted that, in Young's previous case, the district court struck the 1996 conviction from the PSI at sentencing after the government conceded that it did not have adequate proof that Young had committed the offense, but it argued that the conviction's striking was not binding because that sentence had been vacated on appeal.  The government argued that, since the time of sentencing in the previous case, it had acquired proof, in the form

---

[1] Because of intervening caselaw, the government no longer relied upon Young's prior 1995 Florida conviction for burglary as a predicate offense to support his armed career criminal status.

5

of a fingerprint analysis that it had provided to the probation officer on January 25, 2018, showing that Young had committed the offense.

The government attached two exhibits to its objections.  First, it attached the transcript from the sentencing hearing in Young's previous case, where the district court struck the entry for the 1996 conviction from the PSI.  The government also attached a copy of the fingerprint analysis it referred to in its objections, dated December 4, 2015, as well as the judgment from Young's 1996 Florida conviction for selling cocaine, indicating that he had pled guilty to that offense.

In the Second Addendum to the PSI, the probation officer noted the government's objection to Young's lack of armed career criminal status, but because the district court had stricken the 1996 conviction in Young's previous case, maintained her position that the ACCA was not applicable.

Young responded to the government's objections, arguing that, because the government did not have good cause to file its untimely objection to the PSI, it should be ignored.  He noted that objections to the PSI were due on January 19, 2018, but the government filed its objections on January 31.  He also noted that the fingerprint analysis was dated December 4, 2015, but the government did not submit it to the probation officer until January 25, 2018.  He also argued that his 1995 Florida conviction for robbery was not a predicate offense under the ACCA,

6

and that sentencing him under the ACCA would violate his Fifth and Sixth Amendment rights

On February 20, 2018, the government filed a motion to designate Young as an armed career criminal based on the same three convictions that it listed in its objections.  It also argued that, because the ACCA's application is automatic once it becomes apparent that its requirements have been met, the untimely objection to the PSI did not operate as a waiver of the ACCA's application to Young.  Young replied that the government's objections should be overruled because it did not provide an adequate explanation for its untimely filing and, in Young's previous case, the district court excluded the robbery conviction from consideration.

At the sentencing hearing, the district court observed that Young had been designated as an armed career criminal in his previous case.  The district court then asked the government to explain its delay in objecting to the PSI in light of the history of Young's armed career criminal status.  The government responded that the prosecutor handling the case, upon returning from vacation on January 2, had discovered that he had to address, in less than a week, a lengthy motion to suppress in another case he was handling.  Shortly thereafter, the prosecutor participated in a hearing in that case and subsequently filed a supplemental response to the motion to suppress.  Then, the government stated that the prosecutor was out of the office

7

for surgery on January 22. The government asserted that, on January 25, it had begun discussing Young's armed career criminal status with the probation officer, and on January 31, it had filed its objections. It also stated that the prosecutor was not aware of the deadline "because of [his] other commitments." The district court replied that it was aware of the prosecutor's commitments because the prosecutor had appeared before it for the other cases.

The district court then acknowledged that Young had objected to the government's untimely objections, but stated that

> surely it did not come as a surprise that Mr. Young might be viewed as an Armed Career Criminal.
>
> The other reason -- the conviction had not been considered is because the Government had indicated it had no proof. So I do not believe that this is something you had not anticipated.

The government then asserted that it had discussed the issue of the ACCA with Young on multiple occasions.

The government presented testimony from a fingerprint analyst regarding the fingerprint analysis attached as an exhibit to its objections. Young objected to the testimony based on timeliness; the objection was overruled. At the conclusion of his cross-examination, Young challenged the validity of the fingerprint analysis and asked that the witness's testimony be stricken. The district court denied Young's request but continued the hearing to provide the government with time to

8

produce a report regarding the witness's analytical process and for Young to retain an expert.

At the beginning of the continued sentencing hearing, Young withdrew his objection to the validity of the government's fingerprint analysis. He then argued that he should not be designated as an armed career criminal, repeating his arguments from his response to the government's objections. While the district court acknowledged that the government's objections were untimely, it stated that "the record is clear from our previous hearing . . . that the issue of Mr. Young being an Armed Career Criminal had been a fact that was discussed not only in the context of this trial but the previous trial," and granted the government's motion to designate Young as an armed career criminal. The district court calculated a base offense level of 33, a criminal history score of IV, and a guideline range of 188-235 months. After hearing arguments from Young and the government regarding the 18 U.S.C. § 3553 sentencing factors, as well as Young's allocution, the district court imposed a sentence of 180 months of imprisonment for Count 1 and 120 months of imprisonment for Count 2, to be served concurrently, followed by 3 years of supervised release.

On appeal, Young argues that the district court abused its discretion by entertaining the government's untimely objections to the PSI regarding his status

9

as an armed career criminal under the ACCA, 18 U.S.C. § 924(e). He also argues that the district court erred in finding that his prior Florida conviction for robbery qualified as a predicate offense under the ACCA.

## II. DISCUSSION

### A. Untimely Objection to the PSI

We review a district court's decision as to whether to consider untimely objections to the PSI for abuse of discretion. *See United States v. Edouard*, 485 F.3d 1324, 1351 (11th Cir. 2007). Abuse of discretion is a deferential standard of review, under which we will affirm even in situations where we would have made a different decision had we been in the district court's position. *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc). The standard allows for a range of choices for the district court, "so long as that choice does not constitute a clear error of judgment." *Id.* (quoting *Rasbury v. I.R.S. (In re Rasbury)*, 24 F.3d 159, 168 (11th Cir. 1994)).

Under Rule 32 of the Federal Rules of Criminal Procedure, the parties must file their objections to the PSI within 14 days of receipt of the PSI. Fed. R. Crim. P. 32(f)(1). If good cause is shown, a district court has the discretion to alter the time limit for filing an objection or allow a party to make a new objection any time before the sentence is imposed. *Edouard*, 485 F.3d at 1351; *see also* Fed. R. Crim.

10

P. 32(b)(2) (stating that the court may change any time limit in Rule 32 for good cause); Fed. R. Crim. P. 32(i)(1)(D) (allowing a party to make a new objection prior to the imposition of sentence for good cause). Rule 32 is intended to "ensure that the district court can meaningfully exercise its sentencing authority based on a complete and accurate account of all relevant information," and the deadlines and procedures imposed by subsection (f) "are meant to facilitate this process by ensuring that the probation officer has an adequate opportunity to investigate and resolve any potential inaccuracies in the PS[I], regardless of whether those inaccuracies are perceived by one or both parties." *United States v. Aguilar-Ibarra*, 740 F.3d 587, 591 (11th Cir. 2014).

In *Edouard*, we determined that the district court did not abuse its discretion when it refused to consider a defendant's untimely objections to the PSI. 485 F.3d at 1351. As an explanation for his untimely objections, the defendant in that case only provided that "he had been housed in the Special Housing Unit," did not explain why being housed in the Special Housing Unit prevented him from timely filing, and did not otherwise explain why his counsel did not file timely objections or move for an extension. *Id.*

In other contexts, we have determined that good cause exists where "some outside factor, such as reliance on faulty advice, rather than inadvertence or

11

negligence" prevented the party from acting in a timely manner. *E.g.*, *Rance v. Rocksolid Granit USA, Inc.*, 583 F.3d 1284, 1286 (11th Cir. 2009) (quotation marks omitted) (concluding in a civil case that the district court abused its discretion by dismissing plaintiff's complaint without prejudice for failure to comply with Fed. R. Civ. P. 4(m) where the U.S. Marshal had been directed to serve the complaint but failed to do so through no fault of the plaintiff); *see also Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (in the context of Fed. R. Civ. P. 16(b), stating that the good cause standard prohibits extension of a deadline unless it cannot be met despite a party's due diligence). Nonetheless, in other contexts, we have recognized that good cause is a "mutable standard, varying from situation to situation." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1337 n.7 (11th Cir. 2014) (quoting *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996)) (discussing good cause in the context of Fed. R. Civ. P. 55(c)).

The district court did not abuse its discretion in addressing the government's untimely objection to the PSI. The record shows that the district court considered the government's explanations for its late filing and found that those reasons constituted "good cause" to excuse Rule 32's 14-day deadline, which it had the discretion to do. *See Edouard*, 485 F.3d at 1351; *Frazier*, 387 F.3d at 1259.

12

Further, the district court's decision to entertain the government's untimely objection did not implicate the policy concerns underlying Rule 32, which relate to accuracy and completeness at sentencing. *See Aguilar-Ibarra*, 740 F.3d at 591. Both Young and the district court were or should have been aware that his status as an armed career criminal was an issue in his case, and Young was given ample opportunity to challenge the government's evidence regarding the conviction that it sought to use as an ACCA predicate offense. Young also concedes that the government discussed the ACCA enhancement with him, the government's objections were filed only 12 days late, and the government provided documents to the probation officer 6 days after the deadline. Accordingly, we affirm as to this issue.

## B. Prior Florida Conviction

We review de novo whether a conviction qualifies as a violent felony within the meaning of the ACCA. *United States v. Howard*, 742 F.3d 1334, 1341 (11th Cir. 2014). A person who violates 18 U.S.C. § 922(g) and has 3 previous convictions for a violent felony, serious drug offense, or both, is subject to a statutory minimum of 15 years of imprisonment under the ACCA. 18 U.S.C. § 924(e)(1). Under the ACCA's "elements clause," a "violent felony" includes an offense that "has as an element the use, attempted use, or threatened use of

13

physical force against the person of another." *Id.* § 924(e)(2)(B)(i); *United States v. Fritts*, 841 F.3d 937, 939 (11th Cir. 2016).

> Florida law defines the crime of robbery as the
>
> taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.

Fla. Stat. § 812.13(1). In *Stokeling v. United States*, the Supreme Court determined that Florida robbery qualifies as a violent felony under the ACCA's elements clause, affirming our decision on the issue. 139 S. Ct. 544, 554-55 (2019). The Court reasoned that, because Florida robbery requires "resistance by the victim that is overcome by the physical force of the offender," the offense contained the necessary element of "physical force" under the ACCA to qualify it as a violent felony. *Id.* (quoting *Robinson v. State*, 692 So. 2d 883, 886 (Fla. 1997)).

Here, the district court did not err in finding that Young's Florida robbery conviction qualified as a predicate offense under the ACCA. *Howard*, 742 F.3d at 1341. Since the time Young filed his appeal, the Supreme Court has upheld our determination that Florida robbery qualifies as a violent felony, foreclosing any arguments Young may have made to the contrary. *Stokeling*, 139 S. Ct. at 554-55.

**AFFIRMED.**

14