**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 25-4048**

———————

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

RAQUAN UNIQUE SCOTT,

Defendant – Appellant.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Henry E. Hudson, Senior District Judge. (3:23-cr-00165-HEH-1)

———————

Argued: January 30, 2026                                    Decided: May 22, 2026
                          Amended:  May 26, 2026

———————

Before DIAZ, Chief Judge, and NIEMEYER and HEYTENS, Circuit Judges.

———————

Vacated and remanded for resentencing by published opinion. Judge Heytens wrote the opinion, which Chief Judge Diaz joined. Judge Niemeyer wrote a dissenting opinion.

———————

**ARGUED:** Geremy C. Kamens, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Jacqueline Romy Bechara, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Patrick L. Bryant, Assistant Federal Public Defender, Joseph S. Camden, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Erik S. Siebert, United States Attorney, Daniel J. Honold, Assistant United States Attorney, Ellen H. Theisen, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

———————

TOBY HEYTENS, Circuit Judge:

Raquan Scott pleaded guilty to violating 18 U.S.C. § 922(g)(1), a.k.a. "the 'felon-in-possession' offense." *United States v. Canada*, 123 F.4th 159, 161 (4th Cir. 2024). In calculating Scott's advisory sentencing range, the district court concluded he had previously been convicted of a "crime of violence" as defined in Section 4B1.2(a)(1) of the Federal Sentencing Guidelines—thus triggering a higher base offense level than otherwise would have applied. We conclude the district court's legal analysis was faulty and the government has not carried its burden of showing that error was harmless. We thus vacate and remand for resentencing.

## I.

The Guidelines prescribe a base offense level of 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction [for] a crime of violence." U.S.S.G. § 2K2.1(a)(4)(A). For purposes of that provision, "crime of violence" is defined in two ways. See § 2K2.1 cmt. n.1 (directing courts to use the definition contained in Section 4B1.2(a)). The first definition—which we will call the elements clause—covers "any offense under federal or state law" that "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1); accord *Delligatti v. United States*, 604 U.S. 423, 426 (2025) (using "elements clause" to describe a similarly worded provision of the Armed Career Criminal Act). The second definition—the enumerated offense clause—covers "any offense under federal or state law" that "is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession

2

of a firearm . . . or explosive material[.]" U.S.S.G. § 4B1.2(a)(2).[1]

In Scott's presentence report (PSR), the probation officer recommended a crime-of-violence enhancement and identified the triggering offense as "Use of Firearm in Commission of a Felony." JA 136.[2] Although the PSR did not cite the statute of conviction, the parties agree that recommendation was based on Scott's 2008 conviction for violating Virginia Code § 18.2-53.1. The PSR did not cite either subsection of the Guidelines' crime-of-violence definition or state whether the recommendation was based on the elements clause, the enumerated offense clause, or both.

Through his attorney, Scott advised the probation officer that he objected to classifying his conviction under Virginia Code § 18.2-53.1 as a crime of violence because it did not satisfy the elements clause "and is not otherwise within the definition." JA 153. The probation officer then prepared an addendum asserting that Scott's conviction "fits the definitions outlined in USSG § 4B1.2(a)(1)"—*i.e.*, the elements clause—and stating that "[t]he Government advised it agreed with the probation officer." JA 153.

Scott filed written objections to the PSR, asserting his previous conviction "categorically fails to qualify as a crime of violence." JA 23. Consistent with the probation officer's response to his objection, Scott's arguments focused exclusively on the elements

---

[1] To be a "crime of violence" under either definition, the offense also must be "punishable by imprisonment for a term exceeding one year." U.S.S.G. § 4B1.2(a). Everyone agrees that requirement is satisfied here.

[2] All referenced portions of the PSR were "discussed by the parties in their unsealed . . . briefs and at oral argument." *United States v. Heyward*, 42 F.4th 460, 467 n.4 (4th Cir. 2022).

clause and neither discussed nor quoted the enumerated offense clause. In its written response, the government made two arguments. The government's main argument was that Scott's previous conviction satisfies the elements clause. But the government also made a two-paragraph argument that Scott's previous conviction "meets the definition of generic robbery in the enumerated-offense clause." JA 50 (boldface and capitalization removed).

The parties' oral arguments during the sentencing hearing were similar. Scott identified "four ways" Virginia Code § 18.2-53.1 was "broader than the generic category" of offenses that have "as an element[] the use, attempted use, or threatened use of force against another person." JA 71. And although the government briefly reiterated its view that both the elements and enumerated offense clauses were satisfied, the bulk of its presentation addressed Scott's arguments about the elements clause.

The district court overruled Scott's objection and applied the enhancement. Although neither the court's oral ruling nor its later written order cited a particular subsection of Guidelines § 4B1.2(a), we read the district court's decision as adopting the probation officer's recommendation and resting on the elements clause. For one thing, the court's oral ruling closely tracked the elements clause. Compare JA 83 (stating the relevant state-law offense "necessarily involve[s] the use or attempted use of force"), with U.S.S.G. § 4B1.2(a)(1) ("has as an element the use, attempted use, or threatened use of physical force against the person of another"). What is more, the court's written order essentially adopted six previous decisions from federal district courts holding that Virginia Code "§ 18.2-53.1, or a similar statute, qualifies as a crime of violence." JA 125–26. None of those decisions considered whether violations of the relevant statute satisfy the

4

Guidelines' enumerated offense clause. To the contrary, each held that a previous conviction satisfied either the Guidelines' version of the elements clause or a similarly worded provision of the Armed Career Criminal Act. Applying the enhancement produced an advisory Guidelines range of 30 to 37 months of imprisonment. The district court sentenced Scott to 33 months.

Scott appeals, arguing the district court erred in concluding his 2008 conviction satisfies the elements clause. The government primarily defends the district court's elements clause holding while also making two other arguments for affirmance. First, the government renews its suggestion that Scott's 2008 conviction "is . . . *robbery* under the enumerated-offense clause." U.S. Br. 32 (quotation marks removed and emphasis added). Second, the government asserts any error in calculating Scott's Guidelines range is harmless because the district court made clear it would have imposed the same sentence no matter the relevant range. "We review de novo whether a prior conviction qualifies as a crime of violence," *United States v. Salmons*, 873 F.3d 446, 448 (4th Cir. 2017), and review the district court's ultimate sentence for abuse of discretion, see *Gall v. United States*, 552 U.S. 38, 41 (2007).

## II.

The district court erred in holding Scott's conviction for violating Virginia Code § 18.2-53.1 satisfies the Guidelines' elements clause.

### A.

Because we employ a "categorical approach" in deciding "whether a defendant's prior conviction qualifies as a crime of violence," the details of Scott's particular offense

5

are irrelevant. *United States v. Covington*, 880 F.3d 129, 132 (4th Cir. 2018) (quotation marks removed). Instead, we must "compare the elements required for conviction" under the Virginia statute "to the element(s) required for application of the sentence enhancement." *Id*.

The Virginia statute Scott was previously convicted of violating makes it illegal "to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit" one of 12 other enumerated offenses. Va. Code § 18.2-53.1. The parties agree this statute is "divisible" by predicate offense, *Mathis v. United States*, 579 U.S. 500, 505 (2016), and that the relevant predicate here was robbery. The parties also agree that a conviction under Section 18.2-53.1 requires proof of each element of the underlying offense plus all additional requirements imposed by that statute. See *Jay v. Commonwealth*, 659 S.E.2d 311, 321 (Va. 2008) ("[T]here can be no conviction for use or attempted use of a firearm when there has been no commission of one of the predicate offenses enumerated in that statute."). We therefore must decide whether "the combination of the elements of the robbery offense with the firearm elements in [Virginia Code] § 18.2-53.1" satisfies the elements clause. U.S. Br. 12.

One last bit of table-setting is necessary. In *United States v. Parham*, 129 F.4th 280 (4th Cir. 2025), this Court held that "robbery" in violation of Virginia law does not qualify as a crime of violence under the Guidelines' elements clause. See *id.* at 286–87. Relying on the Supreme Court of Virginia's answer to a certified question in an earlier case, *Parham* explained that, in the Commonwealth, a person may be convicted of robbery if they

6

"obtain[] money or any valuable property" while in the victim's presence "by threatening to publicly accuse the victim of having committed sodomy." *Id.* at 286 (quoting *White v. United States*, 863 S.E.2d 483, 486 (Va. 2021)) (alterations removed). Because the offense can be committed based on threats of public accusations alone, *Parham* held that "Virginia robbery" "does not have as a required element the use, attempted use, or threatened use of physical force against the person of another." *Id.* (quotation marks removed).

As a later-constituted panel, *Parham*'s holding binds us regardless of whether we agree with it or think the Court may have overlooked something. See, *e.g.*, *Gibbons v. Gibbs*, 99 F.4th 211, 215 (4th Cir. 2024) ("[I]f stare decisis means anything, it means a future court lacks the authority to say a previous court was wrong about how it resolved the actual legal issue before it."). Our only question under the elements clause is thus whether there is any valid basis for reaching a different conclusion when the predicate offense changes from (a) Virginia robbery; to (b) a violation of Virginia Code § 18.2-53.1 where the predicate offense is robbery. We conclude the answer is no.

True, it seems clear the vast majority of defendants charged with and convicted of "using a firearm in committing robbery," *Jones v. Commonwealth*, 235 S.E.2d 313, 315 (Va. 1977), will have at least *threatened* use of physical force against another person. To violate Virginia Code § 18.2-53.1, a defendant must use, attempt to use, or threaten to use a firearm "while committing or attempting to commit" the underlying offense (here, a robbery). See *Rowland v. Commonwealth*, 707 S.E.2d 331, 334 (Va. 2011) (noting that "the qualifier 'while' limits the applicability of Code § 18.2-53.1 to use of a firearm 'during'" the commission of the predicate offense). The most plausible ways to do so

7

would all seem to involve making the victim aware of the firearm's presence, either by brandishing the firearm or just mentioning its existence ("I have a gun. Give me the money or I'll shoot you."). And as Scott conceded at oral argument, those situations all entail at least an implicit "threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1).

But the categorical approach requires two moves that cut sharply against the government here. *First*, we must limit our analysis to "the *least* culpable" conduct covered by the relevant statute, *United States v. King*, 673 F.3d 274, 278 (4th Cir. 2012) (emphasis added), and the government makes no argument that Virginia Code § 18.2-53.1 is further divisible into "use," "attempt," and "display" variants. So even if "display[ing]" a firearm "in a threatening manner" (Va. Code § 18.2-53.1) is a categorical match to "threaten[ing] use of physical force against the person of another" (U.S.S.G. § 4B1.2(a)(1)), that is not the only question before us. Instead, we must consider whether the same is also true of "us[ing] or attempt[ing] to use" a firearm during a robbery. Va. Code § 18.2-53.1.

*Second*, the categorical approach requires us to focus on the *elements* of a particular offense rather than the ways in which those elements are generally (or even nearly always) satisfied. For instance, although we have no statistics on the matter, we suspect the overwhelming majority (if not all) Virginia defendants convicted of robbery in living memory acquired the stolen property by threatening their victims with physical harm rather than public accusations of sodomy. See, *e.g.*, *United States v. White*, 987 F.3d 340, 344 (4th Cir. 2021) (noting the parties had identified no Virginia cases in which a defendant was charged with robbery on an accusation-of-sodomy theory). Yet our decisions holding

8

that Virginia robbery is neither a violent felony under the Armed Career Criminal Act nor a crime of violence under the Federal Sentencing Guidelines did not ask whether any robbery-via-sodomy-accusation cases have been brought or how realistic the prospects of such a prosecution are. Instead, our holdings turned on whether Virginia robbery "can be committed without proving, *as an element*," the required type of force. *United States v. White*, 24 F.4th 378, 380 (4th Cir. 2022) (emphasis added); see *United States v. Crawley*, 140 F.4th 165, 171–72 (4th Cir. 2025); *Parham*, 129 F.4th at 286–87; *United States v. Williams*, 64 F.4th 149, 156 (4th Cir. 2023); see also *United States v. Taylor*, 596 U.S. 845, 857 (2022) (noting "the oddity of placing a burden on the defendant to present empirical evidence about the government's own prosecutorial habits").[3]

Applying the same analysis here, we conclude that the prosecution need not prove "*as an element*" that the defendant used, attempted to use, or threatened "physical force against the person of another." U.S.S.G. § 4B1.2(a)(1) (emphasis added). As *Parham* and the decisions it builds on explain, one can be convicted of Virginia robbery without using, attempting to use, or threatening physical force at all—much less "against the person of

---

[3] These decisions seemingly refute the government's passing suggestion at oral argument that Scott must show there is a realistic probability that any Virginia defendant would be prosecuted for using a firearm during a robbery where there was no use, attempted use, or threatened use of force against a person. Cf. *Taylor*, 596 U.S. at 859 (declining to apply the realistic-probability standard "because there is no [elements] overlap to begin with"); *United States v. DeFrance*, 124 F.4th 814, 819 n.7 (9th Cir. 2024) (reading *Taylor* as "suggest[ing] that the realistic probability standard may have no application in a case . . . in which the inquiry posed by federal law is whether a state law has the use of force as an element"). We need not resolve that issue, however, because the government forfeited any such argument by not making it in its brief. See, *e.g.*, *Stokes v. Stirling*, 64 F.4th 131, 137 (4th Cir. 2023) (reiterating that appellees may forfeit issues by failing to brief them).

another." U.S.S.G. § 4B1.2(a)(1). And although Virginia Code § 18.2-53.1 requires that the defendant "use," "attempt to use," or "display [a firearm] in a threatening manner" at some point while committing the robbery, it likewise does not require that the use (or attempted use) be against another person or be employed to overcome the victim's resistance. See *Wright v. Commonwealth*, 685 S.E.2d 655, 658 (Va. 2009) (rejecting an argument that a similarly worded offense requires "that the firearm is in some way being used in conjunction with . . . or to further" the predicate offense). Looking solely "at the elements of the underlying [state-law] crime," we conclude there is no categorical match between Virginia Code § 18.2-53.1 and the elements clause. *Taylor*, 596 U.S. at 860.

The government responds that—at least where the predicate offense is robbery—it would be hard to conjure a set of facts that would violate Virginia Code § 18.2-53.1 that would not *also* involve at least a threat of physical force against the person of another. Although the parties have debated various hypotheticals in their briefs and at oral argument, we conclude this hunt for a real-world example ultimately misses the point. As the Supreme Court has emphasized, the categorical approach "does not require—in fact, it precludes—an inquiry into how any particular defendant may commit the crime." *Taylor*, 596 U.S. at 850. Instead, "[t]he only relevant question is" whether a given crime "*always* requires the [prosecution] to prove—beyond a reasonable doubt, [and] *as an element of its case*—the use, attempted use, or threatened use of force" against the person of another. *Id.* (emphases added); see U.S.S.G. § 4B1.2(a)(1).

The government's sole attempt to identify such an element here involves the statute's requirement that the defendant must "use" (or "attempt to use") a firearm. In both

10

its brief and during oral argument, the government quoted an intermediate state appellate court decision for the proposition that, under Virginia Code § 18.2-53.1, "use" is limited to acts "intended to cause physical injury"—presumably to a person. U.S. Br. 18 (quoting *Rose v. Commonwealth*, 673 S.E.2d 489, 492 (Va. Ct. App. 2009)); Oral Arg. 24:10–24:16 (same). If that assertion were valid, the government might have a point because, in that world, there would be no way to obtain a conviction for using a firearm during a robbery without proving, as an element, that the defendant acted, attempted to act, or threatened to act in a way intended to harm a person.

We conclude, however, that the government's argument misreads Virginia law. For one thing, the government's position is difficult to square with the Supreme Court of Virginia's decision in *Rowland v. Commonwealth*, 707 S.E.2d 331 (Va. 2011). That opinion stated—two years after *Rose*—that a person uses a firearm for purposes of Virginia Code § 18.2-53.1 "if he or she employs it" without requiring that the use be against or involve another person. *Id.* at 334. And, in our federal system, "a State's highest court is the final judicial arbiter of the meaning of state statutes." *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975).

The government's argument also misreads *Rose*. The sentence that the government relies on reads, in its entirety: "Once [an] object satisfies the [statutory] definition of a firearm, any use of the firearm that is intended to cause physical injury is a violation of Code § 18.2-53.1." *Rose*, 673 S.E.2d at 492. But *Rose* never said the converse—*i.e.*, that any use that is *not* intended to cause physical injury is not a qualifying use at all—and the rest of the opinion refutes any such interpretation. The argument that *Rose* rejected had

11

nothing to do with the required nature of the defendant's intent: Instead, the defendant argued that she could not be convicted of violating Virginia Code § 18.2-53.1 "because she did not use the gun in the manner for which it was designed, namely, to expel a projectile by force." *Id*. In fact, *Rose* hurts the government more than it helps by defining use as "to employ for *some* purpose" or to "put into service" rather than requiring that the use involve another person in any way. *Id.* (emphasis added) (quoting Use, *Random House Webster's College Dictionary* 1414 (2d ed. 1997)).

Neither Virginia robbery nor Virginia Code § 18.2-53.1—alone or in combination—have "*as an element* the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1) (emphasis added). The district court thus erred in concluding the elements clause is satisfied.

### B.

Three months after we heard argument in this case, one of our sister circuits held that the "use or display of a firearm while committing . . . Virginia robbery qualifies as a crime of violence" under both the elements clause and the enumerated offense clause. *United States v. Mao*, No. 24-2107, 2026 WL 1162679, at *3 (1st Cir. Apr. 29, 2026); see *id.* at *3–4. Of course, "we try to avoid creating circuit splits" when possible. *Scott v. Baltimore Cnty.*, 101 F.4th 336, 348 (4th Cir. 2024). But having carefully reviewed the reasons the First Circuit gave for reaching its conclusion about the elements clause, we respectfully disagree.

*Mao* began by quoting this Court's decisions for two propositions: (1) Virginia robbery requires that the defendant obtain the victim's property "*by violence or*

12

*intimidation*"; and (2) under Virginia law, intimidation is defined as words or conduct that "plac[e] the victim *in fear of bodily harm*." 2026 WL 1162679, at *4 (first quoting *Williams*, 64 F.4th at 153; then quoting *Parham*, 129 F.4th at 287–88) (emphases in original). And because Virginia Code § 18.2-53.1 requires that the use or display of a firearm "occur 'while' committing the predicate offense," the First Circuit concluded that a conviction for using a firearm during a robbery "requires using a firearm while overcoming the victim by violence or intimidation." *Id.* But as we have already explained, this Court's decision in *Parham* squarely holds that Virginia robbery *does not* invariably require the sort of force or intimidation described in the First Circuit's opinion. Accord *Williams*, 64 F.4th at 156 (same). *Parham* does not bind the First Circuit, but it does bind us.

*Mao* also reasoned that Virginia Code § 18.2-53.1's requirement that "the defendant use a firearm" "necessarily implicates the threat of immediate violence that the *Parham* court found lacking in a threat to accuse the victim of sodomy." 2026 WL 1162679, at *4. We agree with the First Circuit that a firearm is "a weapon clearly capable of causing physical harm or intimidating the victim" (*id.*), and we repeat our suspicion that the vast majority of defendants convicted of using a firearm during a robbery in violation of Virginia law will have at least threatened to use physical force against another person. But the categorical approach requires us to focus on the *elements* of the relevant offense rather than how those elements are most often—or even nearly always—satisfied in practice. Cf. *Mena v. Lynch*, 820 F.3d 114, 119 (4th Cir. 2016) (explaining we are "obliged" to conduct that analysis and "may not simply rest our decision on some concept of common

13

sense"). And to repeat what we said above, neither the text of Virginia Code § 18.2-53.1 nor the decisions we have identified construing it—none of which are cited in the First Circuit's opinion—states that the required use of the firearm must be against or involve another person.

Finally, *Mao* concluded that a hypothetical set of facts that is similar to one Scott also offers here "does not fit with [Virginia Code] § 18.2-53.1 because that hypothetical defendant never used or displayed the firearm *during the robbery*, as required by the statute." 2026 WL 1162679, at *4. But, once again, we do not read *Taylor* or this Court's previous decisions as requiring such an example in the first place. Instead, our focus must remain on which elements the government must prove and whether *those elements* necessarily entail the use of force against another person. As we have explained, the answer is no.

## III.

Although "procedural errors at sentencing . . . are routinely subject to harmlessness review," *Puckett v. United States*, 556 U.S. 129, 141 (2009), we conclude the government has not carried its burden of showing the district court's error here was harmless. See *United States v. Olano*, 507 U.S. 725, 734 (1993) (noting that, on harmless-error review, the government bears the burden of persuasion with respect to prejudice).

## A.

Start with the government's assertion that the district court was right to apply the crime-of-violence enhancement because Scott's previous offense satisfies the enumerated offense clause.

14

The government's lead argument—that Scott waived or forfeited any response to this point by failing to raise it before the district court or in his opening brief—gets basic principles of appellate procedure wrong. Of course, the government (like any appellee) is free to defend a favorable judgment on any ground supported by the record, even those not adopted by the district court. See, *e.g.*, *JH ex rel. JD v. Henrico Cnty. Sch. Bd.*, 326 F.3d 560, 567 n.5 (4th Cir. 2003). But the government cites no authority for its assertion that Scott (as the appellant) was required to anticipate and rebut such arguments in his opening brief or that his failure to contest a matter before the district court waived any response he might have to arguments that were never adopted by that court.

The government's limited merits arguments also fail to show that Scott's previous offense "is . . . *robbery* under the [Guidelines'] enumerated-offense clause." U.S. Br. 32 (emphasis added). For starters, *Parham* also holds there is "no categorical match between Virginia robbery" and the Guidelines' "enumerated offense of 'robbery.'" 129 F.4th at 287. The government never grapples with the oddity of saying both: (a) the common-law offense that Virginia calls "robbery" *is not* a categorical match to Guidelines "robbery," *id.* at 288; but (b) an aggravated-offense statute that lists 12 predicate felonies (and does not by its terms require a use of force against anyone) *is* generic "robbery" under some circumstances.

The government's argument also overlooks other language in the enumerated offense clause that does not appear to have been cited by anyone before the district court or this Court. As noted earlier, the Guidelines' enumerated offense clause covers "any offense" that "is murder, voluntary manslaughter, kidnapping, aggravated assault, a

15

forcible sex offense, robbery, arson, extortion, *or the use or unlawful possession of a firearm* described in 26 U.S.C. § 5845(a) or explosive material." U.S.S.G. § 4B1.2(a)(2) (emphasis added). Because Section 5845(a) simply defines "firearm" without imposing any other requirements, the highlighted language states that the enumerated offense clause covers "any offense . . . that is the use or unlawful possession of a firearm" (as firearm is defined under federal law). At first blush, that language seems far more directly applicable to an offense that Virginia's highest court has shorthanded as "using a firearm in committing robbery," *Jones*, 235 S.E.2d at 315, than the freestanding word "robbery." See *Parham*, 129 F.4th at 285 (stating that, under the enumerated offense clause, courts identify the Guideline crime that "most closely approximates the prior state crime" (quotation marks removed)).

To be clear: We do not hold Scott's previous conviction for violating Virginia Code § 18.2-53.1 *does* satisfy the enumerated offense clause based on the language quoted above. (After all, no such argument has been made to us or the district court, so we leave that question for another day.) Still, courts read legal texts as a whole rather than individual provisions in isolation. See, *e.g.*, Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167–69 (2012) (discussing the "Whole-Text Canon"). Courts also generally presume a particular situation is controlled by the most obviously applicable language, see, *e.g.*, *Graham v. Connor*, 490 U.S. 386, 394–95 (1989), and that each provision in a list is meant to accomplish some independent end, see, *e.g.*, Scalia & Garner at 174–79 (discussing the "Surplusage Canon"). For that reason, Guidelines § 4B1.2(a)(2)'s language about "use or unlawful possession of a firearm" raises sufficient

16

questions about the government's generic-robbery theory to prevent us from affirming on that ground.[4]

## B.

The government also fails to carry its burden of showing that any error in calculating Scott's Guidelines range was harmless. Such an error is harmless if "(1) the district court would have reached the same result even if it had decided the guidelines issue the other way, and (2) the sentence would be reasonable even if the guidelines issue had been decided in the defendant's favor." *United States v. Gomez-Jimenez*, 750 F.3d 370, 382 (4th Cir. 2014) (quotation marks removed). Although the first requirement is satisfied here, we conclude the second is not.

The parties agree that—absent a crime of violence enhancement—Scott's guidelines range would have been 15 to 21 months. In that scenario, the district court's 33-month

---

[4] Here too, we are unpersuaded by the First Circuit's explanation for concluding that Virginia Code § 18.2-53.1 "categorically matches the career offender enumerated offense of 'robbery.'" 2026 WL 1162679, at *3. *Mao*'s explanation for its conclusion on this point was that, under Virginia law, a conviction for "use of a firearm during the commission of a robbery" *necessarily* "requires a type of force that creates an immediate danger to the person." *Id.* (quotation marks removed). As we have already explained, we see no such element in Virginia Code § 18.2-53.1, even when the predicate offense is robbery. Here too, the *Mao* court was not bound by *Parham* and thus had no need to—and did not—grapple with the oddity of concluding that the crime Virginia calls robbery is *not* robbery under the Guidelines but a violation of Virginia Code § 18.2-53.1 somehow is. *Mao* also never considered how the same Guidelines' reference to "the use or unlawful possession of a firearm" squared with its conclusion that using a firearm during a robbery "is . . . robbery" under the enumerated offense clause. U.S.S.G. § 4B1.2(a)(2). Finally, here—and unlike in *Mao*—the parties do not even agree about which Guidelines edition governs in assessing whether Scott's previous offense was generic robbery. See *Mao*, 2026 WL 1162679, at *5 n.7 (noting the parties' "agree[ment]" on that point).

sentence would have represented a significant upward variance and thus would need to be "supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50. Yet here—besides glancing references to "the record at hand," Scott's "criminal history," and the fact that he committed his current offense just "three months" after being released from a previous sentence, JA 99, 108—the district court said little about *why* it concluded a 33-month sentence was appropriate. Although the district court's cursory discussion may have given us a basis to affirm a within-Guidelines sentence, see *Rita v. United States*, 551 U.S. 338, 341 (2007) (holding that appellate courts may presume such sentences are reasonable), the same cannot be said for a hypothetical, above-Guidelines one.

Our concerns are magnified by the district court's apparent confusion about the underlying circumstances of Scott's criminal history. Throughout the sentencing hearing, the district court repeatedly asserted that Scott *personally* possessed a firearm and "pointed it at other individuals" during his previous offense. JA 73. As the government concedes— and, to its credit, at least once attempted to point out to the district court—that is wrong. Rather, as the government acknowledges, it was one of Scott's codefendants, not Scott, who possessed the gun. Such confusion about Scott's actual past conduct would raise concerns in any situation. But it is especially troubling when details of "the record at hand" and Scott's "criminal history" were the primary reasons the district court gave for its chosen sentence. For those reasons, we are not confident any error in calculating Scott's Guidelines range was harmless. See *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) (stating that a district court "necessarily" abuses its discretion if it makes a ruling "based . . . on a clearly erroneous assessment of the evidence").

18

\*        \*        \*

The sentence is vacated, and the case is remanded for further proceedings consistent with this opinion.

*SO ORDERED*

19

NIEMEYER, Circuit Judge, dissenting:

After Raquan Scott pleaded guilty to possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), the district court imposed a sentence enhanced under U.S.S.G. § 2K2.1(a)(4)(A), as Scott had previously been convicted of a "crime of violence," based on his prior conviction under Virginia Code § 18.2-53.1.  That statute makes it a felony "to use or attempt to use any . . . firearm or display such weapon in a threatening manner while committing or attempting to commit . . . robbery," as relevant here, or one of several other felonies enumerated in the statute.

Scott objected to the enhancement, arguing that his crime of conviction did not have "as an element the use, attempted use, or threatened use of physical force against the person of another," as required to qualify as a crime of violence under U.S.S.G. § 4B1.2(a)(1) (the "elements clause" defining a "crime of violence").  But the district court rejected his argument, adopting the position taken in the presentence report that Scott's conviction for violating § 18.2-53.1 was a conviction for a crime of violence and conforming to the unanimous view of district courts in the Fourth Circuit.

On appeal, however, the majority agrees with Scott, concluding that "[t]he district court erred in holding Scott's conviction for violating Virginia Code § 18.2-53.1 satisfies the Guidelines' elements clause." *Ante* at 5.  The majority reasons that under Virginia law, § 18.2-53.1 does not require proof that the defendant used or attempted to use a firearm "against the *person of another*." *Ante* at 9–10 (emphasis added).  Indeed, it holds that Virginia law does not even require that the firearm be used "to overcome the victim's

20

resistance," such that a § 18.2-53.1 violation predicated on robbery may be committed without "threatening physical force at all." *Id*.

I believe that the majority's reading inappropriately pieces together excerpts from Virginia court decisions to reach a completely irrational reading of § 18.2-53.1. And even though the First Circuit has now — since oral argument — also rejected the majority's position, *see United States v. Mao*, No. 24-2107, __ F.4th __, 2026 WL 1162679 (1st Cir. Apr. 29, 2026), the majority discounts that court's commonsense reading of the statute, creating a circuit split.

For the reasons given here, I respectfully dissent.

First, "robbery," as commonly defined, satisfies the elements clause. Indeed, the Supreme Court has characterized common-law robbery as "*the quintessential*" violent-felony predicate that satisfies the identical elements clause used in defining "violent felony" in the Armed Career Criminal Act (ACCA). *Stokeling v. United States*, 586 U.S. 73, 80 (2019) (emphasis added); *see also id.* at 83 (recognizing that "robbery . . . has always been within the category of violent, active crimes that Congress included in ACCA" (cleaned up)); *see also United States v. Shanton*, 125 F.4th 548 (4th Cir. 2025) (holding that Maryland robbery qualifies as a violent felony under ACCA's elements clause); *United States v. Dinkins*, 928 F.3d 349, 355–57 (4th Cir. 2019) (same as to North Carolina common-law robbery); *United States v. Doctor*, 842 F.3d 306 (4th Cir. 2016) (same as to South Carolina common-law robbery). This is because robbery is traditionally defined as "the felonious taking and carrying away of the personal property of another, from his person or in his presence, *by violence, or by putting him in fear*." William L. Clark &

21

William L. Marshall, *Law of Crimes* § 12.09, at 781 (6th ed. 1952) (emphasis added); *see also* 3 Wayne R. LaFave, *Substantive Criminal Law* § 20.3 (3d ed. 2017) (defining robbery as the "misappropriation of property under circumstances involving a danger to the person"); *Stokeling*, 586 U.S. at 77 (recognizing that "[a]t common law, an unlawful taking was merely larceny *unless the crime involved 'violence'*" (emphasis added)).

But Virginia common-law robbery is different in one respect. Like other jurisdictions, Virginia defines common-law robbery as "the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, *by violence or intimidation*." *Durham v. Commonwealth*, 198 S.E.2d 603, 605 (Va. 1973) (emphasis added) (quoting *Jones v. Commonwealth*, 1 S.E.2d 300, 301 (Va. 1939)). As the Supreme Court of Virginia explained long ago, robbery requires proof of "violence" "sufficient" to "call[] out [the victim's] resistance" or, "in place of actual violence, there must be such demonstrations as put the person robbed in fear." *Houston v. Commonwealth*, 12 S.E. 385, 387 (Va. 1890). And in general, that "fear *must be of a physical nature*." *Id.* (emphasis added). But Virginia law also includes a "single exception" to the general rule that the victim must fear bodily harm — namely, "if one parts with his goods through fear of a threatened charge of sodomy, the taking is robbery." *Id.* The Supreme Court of Virginia recently confirmed that the Commonwealth continues to "recognize[] the crime-against-nature doctrine in robbery cases," such that, in Virginia, a defendant can commit "robbery by means of threatening to accuse the victim of having committed . . . a crime against nature under extant criminal law." *White v. United States*, 863 S.E.2d 483, 483, 492 (Va. 2021). We have accordingly held, based solely on Virginia's recognition of the

22

sodomy-threat exception, that Virginia common-law robbery does not satisfy the elements clause in either ACCA or the Sentencing Guidelines because threating to accuse the victim in this manner is not violent. *See United States v. White*, 24 F.4th 378 (4th Cir. 2022) (ACCA); *United States v. Williams*, 64 F.4th 149 (4th Cir. 2023) (same); *United States v. Parham*, 129 F.4th 280, 286–87 (4th Cir. 2025) (Sentencing Guidelines); *United States v. Crawley*, 140 F.4th 165, 171 (4th Cir. 2025) (same).

But this non-violent sodomy-threat exception is rendered meaningless when the firearm requirement of § 18.2-53.1 is added to robbery. To obtain a conviction under that statute, the Commonwealth must prove all the elements of the underlying offense — here, robbery in its completed form — as well as the additional elements added by § 18.2-53.1, namely, that the defendant "use[d] or attempt[ed] to use a[] . . . firearm or display[ed] such weapon in a threatening manner" and did so *during* the commission of the underlying crime. *See Jay v. Commonwealth*, 659 S.E.2d 311, 321 (Va. 2008) ("[T]here can be no conviction for use or attempted use of a firearm when there has been no commission of one of the predicate offenses enumerated in that statute"); *Rowland v. Commonwealth*, 707 S.E.2d 331, 334 (Va. 2011) (explaining, in the context of § 18.2-53.1, that "'while' is synonymous with 'during'"). Thus, the elements of § 18.2-53.1 predicated on robbery are that the defendant (1) displayed a firearm in a threatening manner or otherwise used or attempted to use a firearm (2) while (3) taking the personal property of another, (4) from his person or in his presence, (5) against his will, (6) with the intent to steal, (7) by violence or intimidation. *See* Va. Code Ann. § 18.2-53.1; *Durham*, 198 S.E.2d at 605.

23

This compound crime readily satisfies the Sentencing Guidelines' elements clause defining a crime of violence because there is simply no way to use or attempt to use a firearm while overcoming the victim's will by violence or intimidation that does not involve "the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). Any robbery committed through "violence" requires the use of such force. *See Stokeling*, 586 U.S. 73. And when a defendant uses or attempts to use a firearm while committing a robbery through "intimidation," that also necessarily entails either the threatened or attempted use of such force. This is because the "intimidation" necessary to commit robbery in Virginia almost invariably requires proof of "demonstrations [that] put the person robbed in fear . . . of a physical nature." *Houston*, 12 S.E. at 387; *see also Bivins v. Commonwealth*, 454 S.E.2d 741, 753 (Va. Ct. App. 1995) ("Intimidation results when the words or conduct of the accused exercise such domination and control over the victim as to overcome the victim's mind and overbear the victim's will, *placing the victim in fear of bodily harm*" (emphasis added)). For common-law robbery, there is, of course, "the single exception," *Houston*, 12 S.E. at 387, of instead satisfying the intimidation requirement by "threatening to accuse the victim of having committed . . . a crime against nature," *White*, 863 S.E.2d at 483. But with the additional elements of § 18.2-53.1 requiring proof that the defendant used or attempted to use a firearm during the robbery, that non-violent means of committing robbery is eliminated. One cannot possibly overcome the victim's will *solely* by means of a non-violent, sodomy-accusation threat while simultaneously using or attempting to use a firearm — the combination produces a null set. Thus, the use or attempted use of a firearm during a

24

robbery, in violation of § 18.2-53.1, "has as an element the use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 4B1.2(a)(1), even though Virginia common-law robbery alone does not.

This was well brought out by the First Circuit's recent decision in *Mao*, which recognized that a violation of § 18.2-53.1 predicated on robbery "necessarily implicates the threat of immediate violence that [is] lacking in a threat to accuse the victim of sodomy." __ F.4th __, 2026 WL 1162679, at *4; *see also Williams v. United States*, No. 1:16-cv-773 (LMB), 2023 WL 6849433 (E.D. Va. Oct. 16, 2023); *United States v. Alexander*, No. 3:25-cr-39 (RCY), 2025 WL 1969913 (E.D. Va. July 16, 2025).

In an effort to challenge this conclusion, Scott notes that Virginia "robbery is a continuing offense that takes place over time" and argues that it follows that "the use-of-a-firearm element" necessary for a conviction under § 18.2-53.1 could "occur before or after the defendant has obtained property by means of a sodomy-accusation threat." But that assertion is not consistent with the language of the statute. Scott is correct that robbery in Virginia "is a continuing offense," *Poyner v. Commonwealth*, 329 S.E.2d 815, 836 (Va. 1985), and that a crime that begins as a "larceny may ripen into robbery," *Williams v. Commonwealth*, 685 S.E.2d 178, 181 (Va. 2009). But, as noted, it is the violence or intimidation element that turns larceny into robbery. Thus, for a defendant's use or attempted use of a firearm to occur *during the robbery*, the "use-of-a-firearm element" must take place at the same time as the "violence or intimidation element."

The majority opinion never even attempts to explain how there could be a violation of § 18.2-53.1 predicated on robbery that does not necessarily involve "the use, attempted

25

use, or threatened use of physical force against the person of another," rationalizing that the "hunt for a real-world example ultimately misses the point," *ante* at 10, because the compound offense does not require proof of such force "*as an element*," *ante* at 12. But what this misses is that the underlying Virginia robbery itself requires, as an element, the use of "violence or intimidation" to accomplish the unlawful taking, which is the very element that makes traditional robbery the "quintessential" predicate. *Stokeling*, 586 U.S. at 80. And with the addition of the use or attempted use of a firearm, the § 18.2-53.1 elements eliminate the sole non-violent means of satisfying that element — that of threatening a charge of sodomy. The compound crime of using or attempting to use a firearm during a robbery, in violation of § 18.2-53.1, is brought back in line with robbery, as most commonly defined, thus ensuring that it qualifies categorically as a crime of violence under the Guidelines' elements clause. In short, committing robbery while using or attempting to use a firearm is a crime of violence.

　　I would affirm the judgment of the district court.